199 P.3d 393 (2009)
RENTAL HOUSING ASSOCIATION OF PUGET SOUND, a Washington non-profit public benefit corporation, Appellant,
v.
CITY OF DES MOINES, a Washington municipal corporation, Respondent.
No. 80532-6.
Supreme Court of Washington, En Banc.
Argued May 6, 2008.
Decided January 22, 2009.
*394 Katherine George, Law Offices of Charlotte Cassady, Bellevue, WA, for Appellant.
Jeffrey Scott Myers, Law Lyman Daniel Kamerrer & Bogdanovich, P.S., Olympia, WA, Patricia Bosmans, City of Des Moines, Des Moines, WA, for Respondent.
Greg Overstreet, Allied Law Group, LLC, Olympia, for Amicus Curiae Allied Daily Newspapers of Wash. and Wash. Newspaper Publishers Ass'n.
Jeffrey David Goltz, Olympia, for Amicus Curiae Atty. General's Office.
Pamela Beth Loginsky, Wash. Assn. of Prosecuting Attys., Olympia, for Amicus Curiae Wash. Ass'n of Prosecuting Attys.
Duane Michael Swinton, Steven Joseph Dixson, Spokane, for Amicus Curiae Wash. Coalition for Open Government.
Milton G. Rowland, Foster, Pepper, PLLC, Spokane, kathleen J. Haggard, Dionne & Rorick, Seattle, for Amicus Curiae Wash. State Ass'n of Municipal Attys.
STEPHENS, J.
¶ 1 Washington's Public Records Act (PRA), chapter 42.56 RCW, is a strongly-worded mandate for open government, requiring broad disclosure of public records unless the responding agency demonstrates that the record falls within a specific exemption. RCW 42.56.070(1). When a requesting party is dissatisfied with an agency's response to a records request, it may bring an action under the PRA but must do so "within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." RCW 42.56.550(6). This case presents the question of when a response to a records request is sufficient to trigger the running of the limitation period. The Rental Housing Association of Puget Sound (RHA) appeals an order granting a motion to dismiss its action against the city of Des Moines (City) as untimely under RCW 42.56.550(6). RHA argues that the limitations period did not begin to run until at least April 14, 2006, when the City first provided a privilege log identifying individual records it was withholding under a claim of exemption. We agree, and reverse and remand.

FACTS
¶ 2 The RHA is the largest association of rental housing owners in the Pacific Northwest. On November 11, 2004, the City considered and adopted the crime free rental housing program (Program) in ordinance number 1351. Like programs established in cities across the country, Des Moines' Program includes training for landlords to help control crime in rental housing and provides guidance on crime prevention through environmental design. Rental property owners must pay an annual "crime-free housing endorsement fee" based upon the number of rental units each landlord owns, in addition to obtaining a business license. Clerk's Papers (CP) at 2082. When the Program was adopted, the fee was initially set at $100.00 per unit, and the City later raised the yearly per-unit fee to $105.73.
¶ 3 On July 20, 2005, the RHA in a letter made its first PRA request to the City, seeking 12 different categories of documents relating to the Program. The letter asked for a privilege log for each record claimed to be exempt from disclosure. On July 21, 2005, the City sent an initial response letter acknowledging receipt of the public records request and estimating a response within two weeks.
¶ 4 On August 17, 2005, the City provided RHA with 593 pages of documents relating to the Program. In a cover letter, the City refused to provide hundreds of pages of other documents from the city attorney's file, claiming exemptions under former RCW 42.17.310(1)(i) (2003) (now codified at RCW 42.56.280), the deliberative process exemption, and former RCW 42.17.310(1)(j) (2003) (now codified at RCW 42.56.290), the documents not available through civil discovery exemption. The August 17, 2005 letter from the city attorney did not describe individual documents and did not provide a privilege exemption log; rather, it generally characterized the withheld documents as:
 Inter-office legal opinions and memoranda;
 Copies of reported cases decided by the Washington State Supreme Court and *395 Court of Appeals dealing with rental housing ordinances;
 Copies of newspaper articles regarding the crime-free rental housing ordinance & possible litigation;
 Copies of treatises & articles dealing with the legality of crime-free rental housing ordinances;
 Copies of treatises & articles dealing with the Washington Landlord/Tenant Act (RCW 59.18);
 Attorney notes regarding preparation for teaching the "legal issues" portion of the Landlord Training Workshop;
 Copies of similar crime-free rental housing ordinances from other municipalities;
 Copies of "edits, drafts, re-drafts, & redlined versions" of the crime-free rental housing ordinance; and
 Copies of "edits, drafts, re-drafts, & redlined versions" of the Agenda Items prepared for presentation to the City Council.
CP at 61-62.
¶ 5 On October 7, 2005, the RHA sent a letter to the City complaining that some of the documents withheld by the City, such as treatises, articles, ordinances, and appellate court opinions, did not fall under PRA exemptions and demanded disclosure under the PRA. The RHA again requested the City to provide a privilege log specifically describing each withheld individual document and the basis for withholding each document. The RHA also reminded the City that it had yet to produce numerous requested documents including: e-mails, e-mail attachments, records identifying which properties had been certified as crime-free, records showing which landlords had paid fees for the Program, and records regarding how to comply with the crime prevention through environmental design program.
¶ 6 On October 12, 2005, the City responded in a letter to RHA stating:
At this time, we believe that we have properly withheld exempt public records, stating the specific exemption in the terms required.... However, at your request, I will re-review the applicable statutes and caselaw (sic) concerning these exemptions; and the City Clerk will again request that City departments review their records, specifically searching for public records that you suspect we have failed to disclose. We will attempt to provide a complete response by November 18, 2005.
CP at 68.
¶ 7 The City did not respond to RHA by November 18, 2005. CP at 70. On November 23, 2005, the Des Moines city attorney sent a letter to RHA indicating: "Due to the demands that come with the end of the year, I will not be able to provide you with a complete response to your October 7, 2005 public disclosure request until December 9, 2005." CP at 70. The City did not respond to RHA by December 9, 2005.
¶ 8 On January 25, 2006, RHA wrote to the City demanding results of the "re-review" of its July 20, 2005 first PRA request:
It is now January 25, 2006  more than two months past the City's original estimation of November 18, and nearly five months from when the documents should have been produced in the first instance. Unless we receive immediate assurance from the City that the responsive documents will be promptly produced, we will file suit under the PDA to compel production of the documents. Further, we will seek an award of monetary sanctions and attorneys' fees and costs for bringing such an action
. . . .
To avoid such dispute, the City must promptly and fully respond to our PDA requests, copies of which are attached for your convenience.
CP at 72-73. In this letter, RHA once again requested a privilege log detailing individual records claimed exempt by the City. RHA also made a second PRA request for documents containing additional cost and revenue information generated after RHA made its July 20, 2005 first PRA request and for copies of the 2006 City budget.
¶ 9 On January 26, 2006, the city attorney responded to RHA in a letter stating that all responsive records had been provided and the City had properly withheld exempt public records using the same specific exemptions *396 language as stated in the City's August 17, 2005 letter. Also, on January 26, 2006, the city attorney sent a letter to RHA stating that the City had received RHA's second PRA request and would provide an appropriate response as soon as possible.
¶ 10 On February 2, 2006, RHA sent a letter to the City stating that the City was in continuing violation of the PRA because: (1) the City must specifically use a privilege log to identify withheld documents and explain the grounds for withholding each specific document, and it had not yet done so; (2) the City may not withhold protected documents in their entirety where protected content can be redacted, and the City had made no effort to provide any redacted documents; (3) exemptions claimed under the deliberative process exemption and the documents not available through civil discovery exemption based upon the attorney/client privilege or work product doctrines must provide sufficient detail to justify the claims, which the City had not done; (4) the City may not withhold the entire city attorney file based on a work product claim.
¶ 11 On February 8, 2006, in response to RHA's February 2, 2006 letter, the city attorney called RHA's attorneys and through a teleconference the parties agreed that they would work cooperatively to avoid litigation. Shortly after the teleconference, RHA sent an e-mail to the city attorney requesting that the City e-mail any documents in electronic format directly to RHA's attorney. The city attorney replied via e-mail: "Will do. I appreciate your willingness to take a cooperative approach to resolving these issues." CP at 2170.
¶ 12 On February 10, 2006, in response to RHA's second PRA request of January 25, 2006, the City sent a letter to RHA containing the city of Des Moines 2006 budget appendix, adopted version, which it asserted had just been completed.
¶ 13 On March 1, 2006, the City provided RHA with 386 pages of documents responsive to the January 25, 2006 second PRA request. Many of the documents appeared identical to those provided on August 17, 2005. In a cover letter, the City stated that it expected to provide by March 7, 2006 other documents responsive to the January 25, 2006 second PRA request by RHA, all of which concerned revenues and expenditures of the Program; however, the City added the following:
On February 10, 2006, we provided a copy of the City's public budget document as the first installment of the City's response to your January 25, 2006 request for public disclosure. By March 7, 2006, we expect to be able to provide you with the final installment of requested documents: the three categories of records you have requested concerning the revenues and costs of services provided in connection with the Crime Free Housing Ordinance. The documents we expect to be able to provide at that time are 2005 and 2006 financial reports for revenues and expenditures charged directly to the crime free rental housing program. Indirect costs supporting the program are charged to other departments and divisions within the City's budget and will be reported in the final overall cost of the program each year by the Finance Director; this report has not yet been prepared.
CP at 1493-94.
¶ 14 On March 8, 2006, the City provided an installment of documents to RHA's January 25, 2006 second PRA request. This installment included cost and revenue information for the period before RHA's July 20, 2005 first records request was made. The city attorney in the March 8 letter explained the lack of revenue information regarding the Program:
All general revenues of the City of Des Moines are deposited into the general fund, regardless of which department generates the revenues. Expenditures by City departments are made from the general fund. This budgeting process does not track each dollar of revenue or cost by the "program" to which it is related.
. . . .
The financial records that we have provided at this time are 2005 and 2006 financial reports for revenues and expenditures charged directly to the Crime Free Rental Housing Program.... Because the City of *397 Des Moines budgets by department, not by program, these reports do not document indirect costs that support the program but are charged to other departments within the City.
CP at 2178. On March 21, 2006, the City sent a letter containing an installment of 26 documents to the RHA's January 25, 2006 second PRA request. These 26 documents included pleadings and other documents related to the City's prosecution of notices of infraction for failure to pay business license and/or Program charges. On March 22, 2006, RHA lawyers telephoned the city attorney and again asked for a detailed privilege log in accordance with the PRA.
¶ 15 On April 14, 2006, the City sent a letter to RHA that attempted to provide a privilege log regarding the withheld documents relating to RHA's first PRA request of July 20, 2005. On April 21, 2006, RHA responded, claiming that the City's privilege log was missing additional identification information regarding several documents such as authors, recipients, and other details, and that several documents were clearly not eligible for exemption under the PRA.
¶ 16 On June 16, 2006, the City sent a response letter to the RHA supplying some of the requested identification information but refused to produce any of the withheld records. Shortly after receiving that letter, RHA's attorney called Des Moines City Attorney Linda Marousek and left a voicemail indicating that unless a number of the withheld documents were produced, the RHA would file suit against the City under the PRA. On June 20, 2006, Ms. Marousek responded by e-mail to the RHA attorney, suggesting the City was preparing to defend against litigation under the PRA by RHA. On November 1, 2006, Ms. Marousek left her position.
¶ 17 On January 16, 2007, RHA filed suit in King County Superior Court, alleging that the City had improperly withheld public records under the PRA since at least April 14, 2006, the date that the City first provided a privilege log purporting to identify individual records it was withholding.
¶ 18 In early February 2007, Acting Des Moines City Attorney Richard Brown called RHA's attorney and requested a meeting to discuss the PRA litigation and the City's Program. On February 12, 2007, at that meeting Mr. Brown provided two documents to RHA reflecting total fees collected through the Program for 2005 ($284,600) and 2006 ($332,200). These two documents did not exist at the time of the July 25, 2005 first PRA request by RHA but had been recently created by Mr. Brown for settlement purposes.
¶ 19 On February 26, 2007, RHA filed a third PRA request with the City regarding the Program. On February 27, 2007, the City sent a response letter to the RHA acknowledging receipt of the third PRA request and estimating a response within two weeks. To this date, the City has not responded to RHA's third PRA request because, according to Mr. Brown, "it is difficult to identify what specific records they want." CP at 2224.
¶ 20 In May 2007, RHA and the City commenced settlement negotiations. On May 22, 2007, Mr. Brown provided copies of the withheld records to RHA to facilitate settlement, on the condition that the City was not admitting that it improperly withheld the documents. The City and RHA were unable to reach a settlement. On May 29, 2007, though no settlement was reached, the City decided that the RHA could keep and review the withheld documents.
¶ 21 On June 11, 2007, the City filed a motion to dismiss, contending that RHA failed to file its PRA suit within the one-year statute of limitations under RCW 42.56.550(6). The trial court entered an order granting the City's motion to dismiss. RHA timely appealed and sought direct review by this court. CP at 2291-92. On March 5, 2008, we granted direct review under RAP 4.2(a)(4).

ANALYSIS
¶ 22 The PRA is a strongly worded mandate for broad disclosure of public records. Hearst Corp. v. Hoppe, 90 Wash.2d 123, 127, 580 P.2d 246 (1978). It requires that "[e]ach agency, in accordance with published rules, shall make available for public inspection and *398 copying all public records, unless the record falls within the specific exemptions of ... this chapter, or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). RCW 42.56.210(3) states, "Agency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld."
¶ 23 The PRA's disclosure provisions must be liberally construed and its exemptions narrowly construed. RCW 42.56.030. The burden of proof is on the agency to establish that any refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part. RCW 42.56.550(1). Administrative inconvenience or difficulty does not excuse strict compliance with the PRA. Zink v. City of Mesa, 140 Wash.App. 328, 337, 166 P.3d 738 (2007).
¶ 24 This case presents our first opportunity to address RCW 42.56.550(6), which was enacted in 2005 and provides a one-year statute of limitations for PRA actions. LAWS OF 2005, ch. 483, § 5. RCW 42.56.550(6) states, "Actions under this section must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." This provision replaces prior longer limitations periods applicable to PRA claims. See, e.g., LAWS OF 1982, ch. 147, § 18 (five-year statute of limitations), codified at RCW 42.17.410; LAWS OF 1973, ch. 1, § 41 (six-year statute of limitations).
¶ 25 Our purpose when interpreting a statute is to determine and enforce the intent of the legislature. City of Spokane v. Spokane County, 158 Wash.2d 661, 673, 146 P.3d 893 (2006). Where the meaning of statutory language is plain on its face, we must give effect to that plain meaning as an expression of legislative intent. Id. In construing the PRA, we look at the Act in its entirety in order to enforce the law's overall purpose. See Ockerman v. King County Dep't of Developmental & Envtl. Servs., 102 Wash.App. 212, 217, 6 P.3d 1214 (2000). Our review is de novo. RCW 42.56.550(3).
¶ 26 The trial court held that the one-year statute of limitations under RCW 42.56.550(6) commenced with the City's August 17, 2005 letter claiming exemptions in response to RHA's first (July 20, 2005) PRA request. CP at 2288. RHA contends that the August 17, 2005 letter was insufficient because a claim of exemption requires a detailed privilege log under RCW 42.56.210(3) and our decision in PAWS II[1]. RHA's view is supported by amici Allied Daily Newspapers of Washington and Washington Coalition for Open Government. Because the City did not provide a privilege log until April 14, 2006, RHA contends the one-year statute of limitations did not begin to run until that date, with the result that its suit was timely filed on January 16, 2007.
¶ 27 The City responds that PAWS II is irrelevant, as it did not address the statute of limitations and was decided 11 years before enactment of the 1-year limitations period at issue here. Id. at 243, 884 P.2d 592. The City urges us to read RCW 42.56.550(6) in isolation from other parts of the PRA and in light of the public policy favoring statutes of limitation. The City also argues that RHA's privilege log theory is at odds with prior case law establishing that an agency may argue new grounds for exemption at a PRA show cause hearing even if previously-stated reasons for refusing disclosure are invalid. Id. at 253, 884 P.2d 592; Cowles Publ'g Co. v. City of Spokane, 69 Wash.App. 678, 683, 849 P.2d 1271, review denied, 122 Wash.2d 1013, 863 P.2d 73 (1993). Because RCW 42.56.550(6) requires only a "claim of exemption" and does not reference a "privilege log," the City maintains that the trial court under the plain meaning doctrine correctly interpreted the intent of the legislature in holding that the one-year statute of limitations was triggered by the City's August 17, 2005 letter claiming exemptions.
¶ 28 The key issue then is when a "claim of exemption" under RCW 42.56.550(6) is effectively made. We find the reasoning of *399 PAWS II guides our resolution of this issue. This court in PAWS II addressed the issue of whether information in a university researcher's unfunded grant proposal involving use of animals in scientific research was subject to disclosure under the PRA. PAWS II, 125 Wash.2d at 247, 884 P.2d 592. Of particular significance here, the Court in PAWS II denounced the "silent withholding" of information in response to a PRA request:
Silent withholding would allow an agency to retain a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld. The Public Records Act does not allow silent withholding of entire documents or records, any more than it allows silent editing of documents or records. Failure to reveal that some records have been withheld in their entirety gives requesters the misleading impression that all documents relevant to the request have been disclosed. Moreover, without a specific identification of each individual record withheld in its entirety, the reviewing court's ability to conduct the statutorily required de novo review is vitiated.
Id. at 270, 884 P.2d 592 (citation omitted). We emphasized the need for particularity in the identification of records withheld and exemptions claimed:
The plain terms of the Public Records Act, as well as proper review and enforcement of the statute, make it imperative that all relevant records or portions be identified with particularity. Therefore, in order to ensure compliance with the statute and to create an adequate record for a reviewing court, an agency's response to a requester must include specific means of identifying any individual records which are being withheld in their entirety. Not only does this requirement ensure compliance with the statute and provide an adequate record on review, it also dovetails with the recently enacted ethics act.
Id. at 271, 884 P.2d 592 (footnote omitted). In a footnote, the court described the sort of identifying information that would be deemed adequate for review purposes under the PRA:
The identifying information need not be elaborate, but should include the type of record, its date and number of pages, and, unless otherwise protected, the author and recipient, or if protected, other means of sufficiently identifying particular records without disclosing protected content. Where use of any identifying features whatever would reveal protected content, the agency may designate the records by a numbered sequence.
Id. at 271 n. 18, 884 P.2d 592.[2]
¶ 29 Consistent with this reasoning, a valid claim of exemption under the PRA should include the sort of "identifying information" a privilege log provides. Id. Indeed, RCW 42.56.210(3) requires identification of a specific exemption and an explanation of how it applies to the individual agency record. We must read "claim of exemption" in RCW 42.56.550(6) in light of this requirement, as we construe the PRA as a whole. Ockerman, 102 Wash.App. at 217, 6 P.3d 1214.
¶ 30 Amici Attorney General's Office, Washington Association of Prosecuting Attorneys, and Washington State Association of Municipal Attorneys contend that, had the Legislature intended to require a privilege log, it would have said so. Yet, the attorney general's own rule under the Washington Administrative Code (WAC) states:
Brief explanation of withholding. When an agency claims an exemption for an entire record or portion of one, it must inform the requestor of the statutory exemption and provide a brief explanation of how the exemption applies to the record or *400 portion withheld. RCW 42.17.310(4)/ 42.56.210(4). The brief explanation should cite the statute the agency claims grants an exemption from disclosure. The brief explanation should provide enough information for a requestor to make a threshold determination of whether the claimed exemption is proper. Nonspecific claims of exemption such as "proprietary" or "privacy" are insufficient.
WAC 44-14-04004(4)(b)(ii). Furthermore, the WAC provides an illustration of compliance with RCW 42.56.210(3) using a detailed privilege log:
One way to properly provide a brief explanation of the withheld record or redaction is for the agency to provide a withholding index. It identifies the type of record, its date and number of pages, and the author or recipient of the record (unless their identity is exempt). The withholding index need not be elaborate but should allow a requestor to make a threshold determination of whether the agency has properly invoked the exemption.
Id. (footnote omitted).
¶ 31 The City's reply letter to the RHA on August 17, 2005, was insufficient to constitute a proper claim of exemption and thus did not trigger the one-year statute of limitations under RCW 42.56.550(6). The City's August 17, 2005 reply letter did not (1) adequately describe individually the withheld records by stating the type of record withheld, date, number of pages, and author/recipient or (2) explain which individual exemption applied to which individual record rather than generally asserting the controversy and deliberative process exemptions as to all withheld documents. CP at 61-62.
¶ 32 The concurrence accepts the argument of the City and amicus Attorney General's Office that the requirement of a privilege log to trigger the statute of limitations would generate uncertainty because a proper claim of exemption would depend on the PRA requester's satisfaction with the detail provided in a claim of exemption, rather than providing a clear line such as can be drawn upon the mere assertion of exemption. Concurrence at 404-05. This argument fails because the PRA's mandate, not the requester's preference, controls when a claim of exemption is validly made. Without the information a privilege log provides, a public citizen and a reviewing court cannot know (1) what individual records are being withheld, (2) which exemptions are being claimed for individual records, and (3) whether there is a valid basis for a claimed exemption for an individual record. Failure to provide the sort of identifying information a detailed privilege log contains defeats the very purpose of the PRA to achieve broad public access to agency records. See RCW 42.56.030. In this regard, requiring a privilege log does not add to the statutory requirements, but rather effectuates them. See RCW 42.56.210(3), .550(6).
¶ 33 Finally, the City argues that requiring a privilege log to state a claim of exemption undermines the public policy favoring statutes of limitation. Undeniably, statutes of limitation serve a valuable purpose by promoting certainty and finality, and protecting against stale claims. Kittinger v. Boeing Co., 21 Wash.App. 484, 486-87, 585 P.2d 812 (1978). However, liberally construing the PRA to effectuate open government  as we must  does not defeat these goals. Certainty and finality are promoted by a construction of RCW 42.56.550(6) that reads "claim of exemption" consistent with other provisions of the PRA, particularly RCW 42.56.210(3), as well as our prior holdings and administrative regulations implementing the Act. See PAWS II, 125 Wash.2d at 271 & n. 18, 884 P.2d 592; WAC 44-14-04004(4)(b)(ii). Moreover, the opportunity for meaningful judicial review of a claim of exemption requires specific identifying information to support a claim.

CONCLUSION
¶ 34 We conclude that the City did not state a proper claim of exemption to trigger RCW 42.56.550(6), the one-year statute of limitations on PRA suits, until April 14, 2006, when it provided RHA with a privilege log. The City's August 17, 2005 letter was insufficient to state a claim of exemption under RCW 42.56.210(3), PAWS II and WAC 44-14-04004(4)(b)(ii). See PAWS II, 125 Wash.2d at 271 & n. 18, 884 P.2d 592. Accordingly, *401 RHA timely filed suit against the City on January 16, 2007. We reverse the trial court's order granting the City's motion to dismiss and remand for further proceedings consistent with this opinion.[3]
WE CONCUR: GERRY L. ALEXANDER, C.J., CHARLES W. JOHNSON, JAMES M. JOHNSON, RICHARD B. SANDERS, TOM CHAMBERS, JJ.
FAIRHURST, J. (concurring in judgment).
¶ 35 I agree with the majority that Rental Housing Association of Puget Sound (RHA) timely filed its lawsuit. I write separately, however, because I disagree with the majority's holding that, for purposes of the Public Record Act's[1] (PRA) statute of limitations, a claim of exemption exists only after an agency produces a privilege log to a requesting party. Unlike the majority, I would hold that an agency does not need to provide a privilege log to provide a claim of exemption. Instead, according to RCW 42.56.210(3) and.550(6), the agency must provide "a statement of the specific exemption authorizing the withholding of the record (or part)." The city of Des Moines (City) did just that in its August 17, 2005, letter. However, because RHA submitted a new request for the same documents on October 7, 2005, and the City did not provide a claim of exemption to that request until its January 26, 2006, letter, the statute of limitations was restarted on the date of that response. As RHA filed its suit within one year of that response, I concur in the majority's judgment that the trial court erred in dismissing the complaint.
¶ 36 At issue in this case is the meaning and applicability of the PRA's statute of limitations, RCW 42.56.550(6), which provides, "[a]ctions under this section must be filed within one year of the agency's claim of exemption or the last production of a record on a partial or installment basis." In particular, we are to determine at what point an agency provides a claim of exemption throughout its response process.
¶ 37 As the term "claim of exemption" is undefined elsewhere in the statute, we must look to its dictionary definition and to its context within the statutory scheme as a whole to derive its plain meaning. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 11, 43 P.3d 4 (2002); Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 11 P.3d 762, 27 P.3d 608 (2000). We also must remember that this court's goal is to carry out the legislature's intent, giving meaning to each word in the statute. Tesoro Ref. & Mktg. Co. v. Dep't of Revenue, 164 Wash.2d 310, 317, 190 P.3d 28 (2008) (citing Burns v. City of Seattle, 161 Wash.2d 129, 140, 164 P.3d 475 (2007)).
¶ 38 Starting with the dictionary definition, "claim" means, "an assertion, statement, or implication (as of value, effectiveness, qualification, eligibility) often made or likely to be suspected of being made without adequate justification." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 414 (2002). Thus, for purposes of the PRA, an agency provides a claim of exemption when it makes a statement asserting that it is withholding documents based upon some exemption.
¶ 39 Having examined the dictionary definition, it is next important to understand the agency response process outlined by the *402 PRA to determine exactly when a claim of exemption occurs.
¶ 40 RCW 42.56.520 outlines the three options an agency has upon receiving a public records request:
Responses to requests for public records shall be made promptly by agencies, the office of the secretary of the senate, and the office of the chief clerk of the house of representatives. Within five business days of receiving a public record request, an agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives must respond by either (1) providing the record; (2) acknowledging that the agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives has received the request and providing a reasonable estimate of the time the agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives will require to respond to the request; or (3) denying the public record request. Additional time required to respond to a request may be based upon the need to clarify the intent of the request, to locate and assemble the information requested, to notify third persons or agencies affected by the request, or to determine whether any of the information requested is exempt and that a denial should be made as to all or part of the request. In acknowledging receipt of a public record request that is unclear, an agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives may ask the requestor to clarify what information the requestor is seeking. If the requestor fails to clarify the request, the agency, the office of the secretary of the senate, or the office of the chief clerk of the house of representatives need not respond to it. Denials of requests must be accompanied by a written statement of the specific reasons therefor. Agencies, the office of the secretary of the senate, and the office of the chief clerk of the house of representatives shall establish mechanisms for the most prompt possible review of decisions denying inspection, and such review shall be deemed completed at the end of the second business day following the denial of inspection and shall constitute final agency action or final action by the office of the secretary of the senate or the office of the chief clerk of the house of representatives for the purposes of judicial review.
RCW 42.56.210(3) speaks to the requirements when an agency denies a request. It states, "[a]gency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld."
¶ 41 Examining these statutes and the dictionary definition, I would hold that a claim of exemption occurs as part of an agency response denying a records request. RCW 42.56.520 provides for only three options upon receiving a request: to provide the documents, to acknowledge the receipt of the request and provide an estimation of time to complete it, or to deny the request. When the agency denies the request, pursuant to RCW 42.56.210(3), it must provide a statement of the specific exemption authorizing the withholding of the record and a brief explanation why the exemption applies to the record. As the legislature used the term "statement" in RCW 42.56.210(3), which is the dictionary definition of "claim of exemption" in RCW 42.56.550(6), I believe that the legislature was using the term "claim of exemption" to describe the requirement outlined in RCW 42.56.210(3) that the agency provide a "statement of the specific exemption authorizing the withholding of the record (or part)."
¶ 42 While the majority has not explicitly done the above analysis, it has implicitly concluded that the term "claim of exemption" concerns agency responses denying requests. The majority goes on to conclude that our decision in Progressive Animal Welfare Society v. University of Washington, 125 Wash.2d 243, 884 P.2d 592 (1994) (PAWS II), requires that the agency provide a privilege log to complete its agency response and thus trigger the running of the statute of limitations. As explained below, I disagree with *403 the majority and would hold that to trigger the statute of limitations, an agency need only provide the type of statement required by RCW 42.56.210(3).
¶ 43 In PAWS II, decided 11 years before the legislature enacted RCW 42.56.550(6), PAWS filed a public records request seeking documents related to funding of research grants at the University of Washington. 125 Wash.2d at 249-50, 884 P.2d 592. The university denied the request and PAWS filed suit. Id. During pretrial discovery, PAWS sought to obtain three documents created after the public records request. Id. at 268, 884 P.2d 592. After conducting an in-camera review, the trial court denied PAWS' request for production on the ground that the documents were not relevant. Id. We disagreed, holding that a letter written by a doctor at the university stating that he would not respond to public records requests was relevant to casting a backward light on the university's response. Id. We held that there was a question of fact whether the doctor silently withheld the documents that should have been disclosed pursuant to PAWS' records request. Id. at 269, 884 P.2d 592. We also noted portions of the grant proposals were not submitted to the trial court. Id. Citing the former version of RCW 42.56.210(3) (former RCW 42.17.310(4) (1994)), we spoke to the silent withholding of documents:
Silent withholding would allow an agency to retain a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld. The Public Records Act does not allow silent withholding of entire documents or records, any more than it allows silent editing of documents or records. Failure to reveal that some records have been withheld in their entirety gives requesters the misleading impression that all documents relevant to the request have been disclosed. Moreover, without a specific identification of each individual record withheld in its entirety, the reviewing court's ability to conduct the statutorily required de novo review is vitiated.
The plain terms of the Public Records Act, as well as proper review and enforcement of the statute, make it imperative that all relevant records or portions be identified with particularity. Therefore, in order to ensure compliance with the statute and to create an adequate record for a reviewing court, an agency's response to a requester must include specific means of identifying any individual records which are being withheld in their entirety. Not only does this requirement ensure compliance with the statute and provide an adequate record on review, it also dovetails with the recently enacted ethics act.
Id. at 270-71, 884 P.2d 592 (citation and footnote omitted). In a footnote, we described the type of information that needed to be provided:
The identifying information need not be elaborate, but should include the type of record, its date and number of pages, and, unless otherwise protected, the author and recipient, or if protected, other means of sufficiently identifying particular records without disclosing protected content. Where use of any identifying features whatever would reveal protected content, the agency may designate the records by a numbered sequence.
Id. at 271 n. 18, 884 P.2d 592.
¶ 44 I would hold our analysis in PAWS II does not lead to the conclusion that to provide a claim of exemption sufficient to start the running of the statute of limitations, an agency must provide a privilege log. This is so for several reasons.
¶ 45 When this court created the privilege log requirement in PAWS II, we fashioned the rule out of concern that agencies were silently withholding documents and that trial records were inadequate. It was not out of concern for the running of the statute of limitations. Moreover, by repeatedly stating that providing the information would ensure compliance with RCW 42.56.210(3) and that it would create an adequate record on review, we noted the requirement of providing the specific identifying information went beyond the statutory obligations created by RCW 42.56.210(3). To extrapolate from PAWS II that an agency must provide a privilege log *404 to initiate the running of the statute of limitations not only goes beyond the specific wording of the PRA but also goes beyond a reasonable reading of PAWS II. I believe the only proper way to read the statute of limitations provision in the context of the PRA and PAWS II is to hold that an agency need not provide a privilege log to trigger the running of the statute of limitations.
¶ 46 Applying the above analysis to the facts of the case demonstrates that providing a privilege log is not necessary to trigger the running of the statute of limitations. On July 20, 2005, RHA requested the City disclose certain documents relating to its "Crime-Free Rental Housing Program." Clerk's Papers (CP) at 49-51. On July 21, 2005, the City responded it had received the request and would respond as soon as possible. CP at 53-54. On August 17, 2005, the City provided several records but in a letter, noted that it withheld approximately 600 pages of documents:
We are not providing a number of documents from the City Attorney's Office file, which are described as follows:
Legal Department's Packet No. 1:
The packet excludes approximately 600 pages of documents that are exempt from public disclosure per [former] RCW 42.17.310(1)(i) [(2004)] because they are drafts, notes, and interagency memoranda not relied on in public action; or because they are exempt from disclosure under [former] RCW 42.17.310(1)(j) [(2004)] because they would not be subject to discovery, as attorney work product or subject to attorney/client privilege. These exempt documents include:
 Inter-office legal opinions and memoranda;
 Copies of reported cases decided by the Washington State Supreme Court and Court[] of Appeals dealing with rental housing ordinances;
 Copies of newspaper articles regarding the crime-free rental housing ordinance & possible litigation;
 Copies of treatises & articles dealing with the legality of crime-free rental housing ordinances;
 Copies of treatises & articles dealing with the Washington Landlord/Tenant Act (RCW 59.18);
 Attorney notes regarding preparation for teaching the "legal issues" portion of the Landlord Training Workshop;
 Copies of similar crime-free rental housing ordinances from other municipalities;
 Copies of "edits, drafts, re-drafts, & redlined versions" of the crime-free rental housing ordinance; and
 Copies of "edits, drafts, re-drafts, & redlined versions" of the Agenda Items prepared for presentation to the City Council.
CP at 61-62.
¶ 47 That letter provides a clear statement or assertion that approximately 600 pages were exempted and a brief explanation why. A reasonable person receiving that letter would conclude the City claimed documents were statutorily exempted.[2] To hold otherwise and set the trigger for the running of the statute of limitations at the moment a privilege log is provided would force courts to needlessly delve into whether the agency's privilege log sufficiently described the records.
¶ 48 If there had not been subsequent communications between the City and RHA, I would conclude that the running of the statute of limitations began when RHA received the August 17, 2005, letter. However, on October 7, 2005, in response to the above communications, RHA sent a letter explaining that it believed several of the withheld records were not exempted from disclosure. CP at 64-65. RHA also requested that the City provide a log of the specific documents the City claimed were exempt and to provide *405 any e-mails responsive to the original request. CP at 64-66. RHA requested "that the City ensure that it has provided us with all documents regarding the City's standards for compliance with the [Crime Prevention Through Environmental Design] CPTED element, regarding landlords' compliance with the program's CPTED element and its other provisions, and regarding the City's methods of ensuring such compliance." CP at 66. RHA noted that noncompliance "may result in an award of costs, attorney fees, and statutory penalties." CP at 66.
¶ 49 In an October 12, 2005, letter, the City treated RHA's letter as a new request:
At this time, we believe that we have properly withheld exempt public records, stating the specific exemption in the terms required by [former] RCW 42.17.310(4) [(2003)] [current RCW 42.56.210(3)]; and that our six hundred page response provided all public records that are responsive to your July 20, 2005 public disclosure request. We note that your definition of requested "documents" is considerably broader than the Public Disclosure Act's definition under [former] RCW 42.17.020(41) [(2005)] of "public records" that must be provided in response to a request for public disclosure, and that your definition does not incorporate the numerous statutory exemptions from public disclosure. However, at your request, I will re-review the applicable statutes and case[]law concerning these exemptions; and the City Clerk will again request that City departments review their records, specifically searching for public records that you suspect we have failed to disclose. We will attempt to provide a complete response by November 18, 2005.

CP at 68 (emphasis added). By noting the request, stating that it would request City departments to review their records, and providing an estimation of time to complete its response, this letter indicates that the City treated RHA's October 7, 2005, letter as a new request for documents and in response gave an estimate of time of completion.
¶ 50 Later documents confirm that both parties treated the October 7, 2005, letter as a new request requiring the City to provide a complete response. On November 23, 2005, in a letter regarding "October 7, 2005 Public Disclosure RequestCrime Free Rental Housing Ordinance," the City wrote, "[d]ue to the demands that come with the end of the year, I will not be able to provide you with a complete response to your October 7, 2005 public disclosure request until December 9, 2005." CP at 70. Thus, the City again intimated its view that the October 7, 2005, letter was a new request that required a complete response.
¶ 51 On January 25, 2006, RHA wrote a letter regarding a "Demand for Immediate Production of Documents Requested July 20 and October 7, 2005; And Separate PDA Request for More Recent Documents Regarding the Crime-Free Rental Housing Ordinance/Program and the City's 2006 Budget." CP at 72-75. In that letter, RHA wrote:
On October 7, 2005, we requested that the City either produce the withheld documents (especially several types of documents which appeared to fall far outside the PDA's exemptions), or identify each document and the specific basis for withholding it, as required by the PDA. We also requested that the City produce additional responsive documents (noting broad categories of documents that were apparently missing from the City's response, such as e[-]mails).
By letter dated October 12, 2005, the City indicated, in response to our October 7 letter, that it would "attempt to provide a complete response by November 18, 2005." On November 23, 2005, the City indicated that it would not be able to provide a complete response until December 9, 2005.
It is now January 25, 2006more than two months past the City's original estimation of November 18 and nearly five months from when the documents should have been produced in the first instance. Unless we receive immediate assurance from the City that the responsive documents will be promptly produced, we will file suit under the PDA to compel production of the documents. Further, we will seek an award of monetary sanctions and *406 attorneys' fees and costs for bringing such an action.
CP at 72-73. In that letter, RHA also submitted a new request for documents created after July 20, 2005. CP at 73-74.
¶ 52 RHA's letter indicated it understood the City was treating the October 7, 2005, letter as a new request for documents and that the date projected by the City's October 12, 2005, letter was the estimated amount of time requested by the City to complete its response to the October 7, 2005, request.
¶ 53 On January 26, 2006, the City wrote a letter regarding the "October 7, 2005 LetterCrime Free Rental Housing Ordinance." CP at 77. In that letter, the City noted that, on October 7, 2005, RHA had "demanded that we provide the City Attorney's file, and other unidentified `remaining documents' that `appear to be lacking.'" CP at 78. The City claimed that the documents already provided satisfied the demands in the October 7, 2005, letter. CP at 78. The City wrote:
In short, the City has already provided: (1) a complete six hundred (600) page response to your public disclosure request, on August 17, 2005; (2) a careful identification of documents in the City Attorney's files that were not disclosed, and an explanation of the statutory basis for non-disclosure, in our initial response on August 17, 2005; and (3) a second response on October 12, 2005, reiterating that we had already provided responsive documents and had properly withheld exempt documents. Nothing in the public disclosure act or in any relevant case[]law requires us to provide a third response to your original public disclosure request.
CP at 78. The City proceeded to explain that it was providing a copy of a city clerk's inquiry and two e-mails from the primary records custodian indicating all responsive records had been provided. CP at 78. The City stated that, after reviewing the relevant case law and statutes, it "believe[d] that we have properly withheld exempt public records, stating the specific exemptions in the terms required by RCW [42.56.210(3)]." CP at 78. The City then provided a claim of exemption verbatim to its August 17, 2005, letter. CP at 79.
¶ 54 Given the correspondence between the City and RHA, I would hold that both parties treated the October 7, 2005, letter as a new request for documents. The City did not claim an exemption until January 26, 2006, when it denied the request and asserted the same exemption, using the same wording as in the August 17, 2005, letter. As RHA filed its lawsuit on January 16, 2007, within one year of the claim of exemption, RHA complied with RCW 42.56.550(6). CP at 2. The trial court erred in dismissing RHA's suit as time-barred.
¶ 55 While the majority and I agree on the result, the above application of the facts highlight why my analytical approach is preferable compared to the majority's. First, the facts demonstrate it is possible for an agency to provide a claim of exemption without providing a privilege log. It was clear to RHA that the August 17, 2005, letter was a claim of exemption for documents requested on July 20, 2005. It also became clear the City was claiming an exemption for its withholding documents requested on October 7, 2005. Although the City did not provide the privilege log until April 14, 2006, the parties were aware that the City was withholding documents, claiming they were exempted by the work product, attorney work product, or attorney-client privilege exemptions.
¶ 56 Second, following the majority's approach, RHA could, and does, argue that because the privilege log provided by the City is insufficient, the statute of limitations has yet to run.[3] Majority at 15-17; Appellant's Br. at 36-37. Under my approach, there is a clearer bright line of when an *407 agency makes a claim of exemption. Under the majority's approach, it is possible the City has yet to trigger the running of the statute of limitations even though RHA was well aware years ago the City was withholding documents relying on specific exemptions.
¶ 57 I concur in the majority's result.
I CONCUR: SUSAN OWENS, Justice.
MADSEN, J. (dissenting).
¶ 58 In July 2005, pursuant to the Public Records Act (PRA, or act), the Rental Housing Association of Puget Sound asked the city of Des Moines to disclose documents relating to the city's crime-free rental housing ordinance. The city responded on August 17, 2005, providing many documents. But the city informed the association that it would not provide documents from the city attorney's file entitled "Legal Department's Packet No. 1." Clerk's Papers at 61. This packet, the city said, contained documents exempt from public disclosure pursuant to the act because they were drafts, notes, and interagency memoranda not relied on in a public action, along with attorney work product and documents subject to the attorney-client privilege. Id. The city also briefly described the exempt documents.
¶ 59 The association countered that the documents the city was withholding clearly did not fall within any exemptions. The city responded, asserting that it had properly withheld exempt public records, stating the specific exemption in terms required by the act, and that it had provided all the records responsive to the association's request. But the city agreed to review the law relating to the association's interpretation of the act's exemptions.
¶ 60 In January 2006, the association made a second records request and also demanded the city produce the documents the association had originally requested in July 2005. The city replied that it had responded to the association's first request and no further response to that request was required because the city had properly withheld exempt records. The city also said it would respond to the association's second request for more recent documents.
¶ 61 In January 2007, the association filed a complaint alleging that the city failed to adequately respond to its July 2005 public records request by claiming documents were exempt and generally describing the withheld documents. The city moved to dismiss the association's action on the ground that it was not filed within the act's one-year limitation period. The trial court granted the motion, finding that August 17, 2005the date the city first responded to the public records requestwas the proper date from which to measure the statute of limitations. The court also found that the association's July 2005 request was not answered in installments and that there was no waiver of the statute of limitations. Because I agree with the trial court, I respectfully dissent.

Discussion
¶ 62 The trial court held that the statute of limitations was triggered by the city's initial response to the association's records request on August 17, 2005. The association argues that the city's first response did not adequately "claim" an exemption because it did not sufficiently support the claim with a detailed privilege log. Although the word "claim" is not defined in the act, I agree with the concurrence that the word "claim" should be given its plain meaning: "to assert esp[ecially] with conviction and in the face of possible contradiction or doubt." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 414 (2002). The act does not require that a party prepare a "detailed privilege log." The statute requires only that a party cite a specific exemption and provide a brief explanation. RCW 42.56.210(3). If the legislature intended the term to mean something as particular as a "detailed privilege log," it would have said so.[1]
*408 ¶ 63 In my view, the city's August 17, 2005 response satisfied the requirements of RCW 42.56.210(3). It claimed that records were exempt from disclosure, cited the specific statutory exemptions upon which it relied, identified the file title, and described the types of documents in the file. The city clearly claimed an exemption.
¶ 64 Under the act's statute of limitations, judicial review of agency action "must be filed within one year of the agency's claim of exemption or the last production of a record on an ... installment basis." RCW 42.56.550(6). The act does not state that a judicial action must be filed one year after a party claims an exemption and supports that claim with a sufficiently detailed privilege log or explanatory material. It only provides that an action be filed one year after a party claims an exemption.
¶ 65 The purpose of a statute of limitations is to "compel the exercise of a right of action within a reasonable time so opposing parties have fair opportunity to defend." Stenberg v. Pac. Power & Light Co., 104 Wash.2d 710, 714, 709 P.2d 793 (1985). Statutes of limitation are intended to provide certainty and bring finality to transactions for both parties. Atchison v. Great W. Malting Co., 161 Wash.2d 372, 382, 166 P.3d 662 (2007). The PRA was enacted by Initiative 276 in 1972. Laws of 1973, ch. 1. When it first became law, section 41 of Initiative 276 included a six-year limitations period applicable to all actions under that initiative. Laws of 1973, ch. 1, § 41. In 1982, this limitations period was reduced to five years. Laws of 1982, ch. 147, § 18. Under the 2005 amendment, the legislature reduced the limitations period to one year. See Second Substitute H.B. 1758, 59th Leg., Reg. Sess. (Wash. 2005); Laws of 2005, ch. 483, § 5, now codified as RCW 42.56.550(6).
¶ 66 The legislature's continuous reduction in the time for filing an action under the PRA establishes with clarity its desire that PRA claims be resolved quickly. To hold that the statute of limitations is not triggered until after a detailed privilege log is provided is counter to the legislature's clear policy of finality. As the attorney general points out in his amicus brief, an agency could clearly state the exemption it relies on to justify withholding a document, but under the majority's approach, unless the agency provides a detailed explanation, an action challenging the agency's decision could be filed years later, contrary to the expressed intent of the 2005 amendment.
¶ 67 Applying the new statute of limitations to the facts of this case, I agree with the trial court that the city denied the PRA request on August 17, 2005. The association argues the statute of limitations on its challenge to the city's claim of exemption actually began to run in January 2006, when the city first agreed to review the legal authority the association relied upon in its demand for further disclosure, or in June 2006, when the city provided additional details about the documents it claimed were exempt. But it is the initial exemption claim that triggers the time limit.[2]
¶ 68 To hold otherwise is contrary to the purpose of PRA. Under existing interpretations of the PRA, an agency has an incentive to provide more rather than fewer records. Providing more records serves to limit potential liability vis-a-vis the requestor in that, should litigation ensue, an outside limit will be set on potential penalties. However, if a subsequent disclosure is construed to effectively restart the limitations period for all prior disclosures, that incentive is removed. Indeed, agencies would have a financial disincentive *409 to voluntarily produce more records. That result would be inconsistent with the purpose of the PRA to encourage agencies to place records in the hands of the public.
¶ 69 The association also argues that by providing additional identifying details concerning the withheld documents, the city's response to the July 2005 request was akin to providing records "on a partial ... installment basis" as that term is used in RCW 42.56.550(6). If the agency makes a diligent search for records and produces those that it locates without reference to further installments to come, then the agency has fulfilled its duty. If there is no reference to installments or forthcoming documents, then the one-year limitation period starts at that point. If, however, the agency produces some documents and states that it is gathering more documents for production in a subsequent installment, then the one-year limitations period does not commence running until after the last installment is provided. RCW 42.56.550(6).
¶ 70 The record in this case does not support the association's characterization of the city's response as installments, as the trial court correctly found. Rather, the agency, after providing some records and claiming an exemption for others, thus giving the requestor fair notice of the exemption being claimed, later discovered other responsive records. A similar situation could arise where an agency simply provides such records in an effort to settle a controversy. In each case, the limitations period should not restart with regard to the earlier claimed exemptions.
¶ 71 The association also argues that because its second request for documents in January 2006 was essentially identical to its first request and because some documents produced in response to its second request duplicated documents produced in response to its first request, the second request "restarted" the statute of limitations. The association fails to cite Washington authority supporting its theory, and I have found none. The federal case upon which the association relies, Aftergood v. Cent. Intelligence Agency, 225 F.Supp.2d 27 (D.D.C.2002), is distinguishable because it involved the federal Freedom of Information Act, 5 U.S.C. § 552, request and successive requests that were in fact essentially the same. Aftergood, 225 F.Supp.2d at 31. In any event, the record does not support the association's claim that here the requests were the same. The second request was labeled a "new" request and referred to "new" information generated since the first request. The classification of documents in the second request was not the same as that in the first request.
¶ 72 The trial court correctly determined that the association's PRA claim as to its first request was untimely. I would affirm the trial court.

Conclusion
¶ 73 The purpose of the PRA is to provide a mechanism by which citizens can obtain information about government. The penalty and costs provision in RCW 42.56.550(4) is a means to that end. The one-year statute of limitations in RCW 42.56.550(6) is designed to ensure that actions are resolved quickly to serve the PRA disclosure goals without disproportionate individual financial gain.
¶ 74 Running the statute of limitations from the date a government entity denies disclosure on the claim of exemption does not preclude requestors from getting what they ultimately seek, which is prompt access to government records. Requiring requestors to file a claim for penalties and costs within one year of a denial simply prevents a requestor from delaying and then seeking higher penalties. The majority's interpretation will upset the legislature's careful balancing of interests.
NOTES
[1] Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 884 P.2d 592 (1994).
[2] The concurrence and dissent downplay this language, concluding that in PAWS II we were concerned only with the silent withholding of records and not the statute of limitations. Concurrence at 403-04; Dissent at 407-08 n. 1. Our analysis in PAWS II, however, underscores we were concerned with the need for sufficient identifying information about withheld documents in order to effectuate the goals of the PRA. To sever this important concern from the statute of limitations would undermine the PRA by creating an incentive for agencies to provide as little information as possible in claiming an exemption and encouraging requesters to seek litigation first and cooperation later.
[3] RHA presents additional arguments to reverse the trial court's order, including that: (1) RHA's January 25, 2006 records request restarted the statute of limitations; (2) the City provided records on a partial or installment basis throughout 2006-2007 to toll the statute of limitations; and (3) the City waived the statute of limitations with inconsistent behavior. Because we hold that the City never effectively claimed an exemption to trigger the statute of limitations under RCW 42.56.550(6) until April 14, 2006, we do not reach these additional issues.
[1] The legislature amended and recodified the public disclosure act as the Public Records Act (PRA) in 2005, moving it from chapter 42.17 RCW to chapter 42.56 RCW, effective July 1, 2006. LAWS OF 2005, ch. 274. While RHA first filed its public disclosure request when the public disclosure act was in effect, RHA filed its lawsuit when the PRA was in effect. Thus, the one year statute of limitations was not in effect when RHA filed its request, but that statute of limitations was in effect when RHA filed its suit. To avoid confusion and to be consistent with the majority, this opinion refers to the PRA.
[2] While not dispositive, it is worth noting that, in its response letter dated October 7, 2005, RHA understood the August 17, 2005, letter to be the City's claim of exemption by noting the City's claim of exemption and arguing that the exemptions did not apply. CP at 64. Further, RHA threatened the City with a lawsuit seeking an award of costs, attorney fees, and statutory penalties. CP at 66.
[3] It appears RHA contends the City has yet to produce a proper privilege log, but the statute of limitations began to run on June 16, 2006, as a result of the City's last installment letter. Appellant's Br. at 36-37; Wash. Supreme Court oral argument, Rental Hous. Ass'n v. City of Des Moines, No. 80532-6 (May 6, 2008), at 11 min., 15 sec.; 13 min., 30 sec.; 44 min., 20 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. According to RHA, the statute of limitations began to run only because the letter was the last installment of the disclosure of documents. Appellant's Br. at 36-37; see RCW 42.56.550(6).
[1] The association relies on a footnote in Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 271 n. 18, 884 P.2d 592 (1994) (PAWS), to argue that the city had to specify the title, author, and recipient of each document, and explain how each exemption claimed applied to each record. But the court in PAWS discussed identifying information where agencies silently withheld documents. That is not the case here. Nor was the issue in PAWS what constitutes a "claim of exemption" under the act's statute of limitations. Moreover, RCW 42.56.210(3), the statute that specifies what information an agency must provide when claiming an exemption, does not refer to the act's statute of limitations. The statute of limitations governs when a party must initiate judicial action, while RCW 42.56.210(3) addresses the substance of the agency response. See PAWS, 125 Wash.2d at 271, 884 P.2d 592. As the trial court noted, if the city had never explained why it was withholding the documents, the association still would have had remedies under the act that it would have had to pursue in a timely fashion.
[2] When the city in this case agreed to review the association's legal authority, it was doing nothing more than extending professional courtesy in negotiations. The association misconstrues professional courtesy as restarting the statute of limitations.