# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

ARTHUR WEST,

      Appellant,

      v.

PETE HOLMES, SEATTLE CITY
ATTORNEY'S OFFICE, CITY OF
SEATTLE,

      Respondents

)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 70597-1-I

UNPUBLISHED OPINION

FILED: January 20, 2015

DWYER, J. – Under Washington's Public Records Act (PRA), chapter 42.56

RCW, a government agency's search for records is adequate if it is reasonably

calculated to uncover all relevant documents. Viewed in light of its interpretation

of Arthur West's PRA request for Initiative 502 (I-502) related records and its

procedures for identifying relevant search terms and locations likely to contain

responsive records, the City of Seattle (City) satisfied its burden of demonstrating

an adequate search. Because the trial court record failed to establish a material

factual dispute, the court properly dismissed West's PRA claims on summary

judgment. We affirm.

I

On August 26, 2012, Arthur West submitted a three-part request to the

Seattle City Attorney's public records officer entitled "PRA Request for Inspection

of I-502 Related Correspondence." Among other things, West requested

All records, communication or correspondence (see above) about or concerning I-502, or between the Seattle City Attorney or City Attorney's office and any sponsor or representative of the I-502 campaign January of 2011 to present.

West's request also specified that the records were to include "any paper records, or records of telephone calls, LUDs, text messages, PDA communications, or emails from any mobile or stationary device."

By e-mail dated August 31, 2012, the City's public disclosure officer informed West that based on the subject line of his request, the scope of the City's search would encompass the "records, communications, and correspondence" as West had defined them: "any paper records, or records of telephone calls, LUDs, text messages, PDA communications, or emails from any mobile or stationary device." The City also identified the specific search terms that it would use to search the relevant e-mail accounts. The City asked West for clarification if it had misinterpreted his request.

On October 31, 2012, and December 27, 2012, the City updated West on the status of the ongoing search and reiterated the relevant search terms. West never objected to the scope of the City's search or the proposed search terms and never clarified his records request.

Through December 27, 2012, the City provided West with five installments comprising 469 records with 1,911 pages. The records included the full text of 39 individual Microsoft Outlook calendar entries that were related to I-502. The City did not redact any of the disclosed records or claim any exemptions.

On October 8, 2012, after receiving one installment of records, West filed a complaint in King County Superior Court. He alleged that the City had violated the PRA by unreasonably delaying the release of some records and withholding the release of other records without identifying a lawful exception.

The City provided a second installment of records on October 15, 2012. On October 24, 2012, West filed a citizen's action complaint with the Washington Public Disclosure Committee (PDC), alleging that the Seattle City Attorney and his assistants had violated RCW 42.17A.555 by authorizing the use of City resources for the promotion of I-502. In response to a PDC request, the City provided the PDC with printouts of five weekly views of the City Attorney's Outlook calendar. Both the PDC and the City eventually provided West with copies of the five calendar printouts.[1]

The City moved for summary judgment in the PRA action. In response, West alleged that the City had deliberately and silently withheld the five calendar printouts and that the 39 Outlook appointment entries had therefore been "edited." On May 10, 2013, the trial court granted the City's motion and dismissed West's PRA claims. The court denied both West's motion for reconsideration and his motion to supplement the record. West appeals.

---

[1] The City Attorney and an assistant eventually stipulated to three violations of RCW 42.17A.555 involving the scheduling of I-502 related appointments. The PDC imposed no monetary penalty and recommended that the attorney general and prosecutor take no further action.

II

We review agency actions under the PRA and issues of statutory interpretation de novo. Neighborhood Alliance of Spokane County v. County of Spokane, 172 Wn.2d 702, 715, 261 P.3d 119 (2011); Rental Hous. Ass'n of Puget Sound v. City of Des Moines, 165 Wn.2d 525, 536, 199 P.3d 393 (2009). We also review the trial court's decision on summary judgment de novo. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is appropriate only if the supporting materials, viewed in the light most favorable to the nonmoving party, demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

III

West contends that the City Attorney's weekly calendar views fell within the scope of his PRA request. He argues that the City deliberately and silently withheld these responsive records, thus violating the PRA. We disagree.

The City initially contends that West's challenge to the calendar printouts is not properly before us because it was not included in his complaint and was first raised in response to the City's motion for summary judgment. But West's complaint alleges both an improper delay in disclosing requested records and the withholding of responsive records. Under Washington's liberal pleading rules, the allegations were sufficient to provide notice of the general nature of West's

-4-

claims. <u>See</u> <u>Lightner v. Balow</u>, 59 Wn.2d 856, 858, 370 P.2d 982 (1962); CR 8(a).

The City's reliance on West's failure to assign error to the trial court's findings of fact and conclusions of law is also misplaced. Because we review summary judgment de novo, the trial court's findings of fact and conclusions of law are superfluous and are not to be considered. <u>See</u> <u>Sherman v. Kissinger</u>, 146 Wn. App. 855, 864 n.4, 195 P.3d 539 (2008).

Under the PRA, government agencies must disclose any public record upon request, unless it falls within a specific, enumerated exemption. <u>Neighborhood Alliance</u>, 172 Wn.2d at 715. Courts liberally construe the PRA in favor of disclosure and narrowly construe its exemptions. <u>See</u> RCW 42.56.030; <u>Soter v. Cowles Pub. Co.</u>, 162 Wn.2d 716, 731, 174 P.3d 60 (2007).

West's primary contention is that printouts of the City Attorney's weekly calendars fell squarely within his request for "All records, communication or correspondence . . . about or concerning I-502." This argument is misleading, however, because it focuses solely on a brief excerpt and ignores the full context of his PRA request.

Under the PRA, the adequacy of an agency's search "is judged by a standard of reasonableness, that is, the search must be reasonably calculated to uncover all relevant documents." <u>Neighborhood Alliance</u>, 172 Wn.2d at 720. The focus of this inquiry "is not whether responsive documents do in fact exist, but whether the search itself was adequate." <u>Neighborhood Alliance</u>, 172 Wn.2d

at 719-720. The determination of reasonableness necessarily depends on the circumstances of each case, and to prevail on a motion for summary judgment, the agency bears the burden of demonstrating "beyond material doubt" that the search was adequate:

> To do so, the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith. These should include the search terms and the type of search performed, and they should establish that all places likely to contain responsive materials were searched. An agency may wish to include such information in its initial response to the requester, since doing so may avoid litigation.

Neighborhood Alliance, 172 Wn.2d at 721.

As the City noted in its original response, West identified the subject matter of his request as a "PRA Request for Inspection of 1-502 Related Correspondence." All three parts of West's request specified that the records were to include "any paper records, or records of telephone calls, LUDs, text messages, PDA communications, or emails from any mobile or stationary device." Nothing in the request referred to calendars or even calendar entries.

A party requesting public records under the PRA must, "at a minimum, . . . identify the documents with reasonable clarity to allow the agency to locate them." Hangartner v. City of Seattle, 151 Wn.2d 439, 447, 90 P.3d 26 (2004). Viewed in context, including his own identification of the subject matter and the specified types of records, West's PRA request does not reasonably suggest that he was seeking complete calendar views, whether daily, weekly, or monthly.

Moreover, in its initial response, the City notified West of its understanding of the scope of his request, identified the specific search terms to be used, and asked West for clarification if it misunderstood the scope of his request. In subsequent communications, the City informed West of additional search terms and advised him that the search had encompassed "electronic and manual searches of hard files, email databases, hard-drives, offices, and personal devices of relevant CAO personnel." West never objected to the scope of the City's search or to the proposed search terms. Neither did he provide any clarification of his request.

In supporting declarations, City employees described in detail the procedure utilized to identify specific individuals likely to have records responsive to West's request and the likely location of those records, including both City and personal electronic devices. The City also documented the development of the relevant search terms and the process used to evaluate responsive records.

Finally, the City explained that the Microsoft Outlook electronic calendar entries exist only as individual files in the electronic database. Consequently, a search of the relevant databases will retrieve only the individual appointment entries that satisfy the search criteria. The City provided West with all of those entries, which, contrary to his assertions, were complete and unedited. Although the Outlook software can display and print appointment entries in various formats, including a weekly view, the display draws all of its entries from the

same individual appointment files in the electronic databases that the City searched.

In response to summary judgment, West failed to submit any relevant evidence disputing the adequacy of the City's general search process or its specific response to his PRA request, including the scope of the search, the relevant search terms, or specific locations that the City searched. Nor has he disputed the City's explanation of the structure of the Outlook electronic database. Under the circumstances, there was no material dispute that the City's search was reasonably calculated to discover all relevant documents. Because the search was adequate, the trial court properly dismissed West's PRA claims on summary judgment. See Neighborhood Alliance, 172 Wn.2d at 721-23.

At oral argument on the City's summary judgment motion, West conceded that the City provided him with all responsive individual calendar entries that also appeared on the printed weekly calendar views that the City provided to the PDC. He argues, however, that a proper assessment of public officials requires reviewing the relevant individual scheduled events in the context of other calendar entries. But such a function necessarily encompasses appointment entries that were clearly beyond the scope of West's PRA request for records related to I-502. Whatever the benefits of complete calendar views, they do not relieve West of the obligation to identify the records that he seeks with sufficient clarity to permit the City to locate them. The PRA does not "require public

agencies to be mind readers." <u>Bonamy v. City of Seattle</u>, 92 Wn. App. 403, 409, 960 P.2d 447 (1998).

The City acted lawfully and the superior court ruled properly. Affirmed.

We concur: