[No. 41897-5-II. Division Two. July 30, 2013.]

DEREK E. GRONQUIST, *Appellant*, v. THE DEPARTMENT OF LICENSING, *Respondent*.

730

732

*Derek E. Gronquist*, pro se.

*Robert W. Ferguson, Attorney General*, and *Susan L. Pierini* and *Eric A. Sonju, Assistants*, for respondent.

¶1 VAN DEREN, J.[*] — Derek E. Gronquist appeals from the trial court's summary judgment order in favor of the Department of Licensing on Gronquist's Public Records Act (PRA)[1] claim. Gronquist argues that the trial court erred when it granted Licensing's summary judgment motion because (1) Licensing failed to respond within five business days of his PRA request, thus entitling him to penalties; (2) the information Licensing redacted from a master business license application was not exempt from disclosure under the PRA; (3) Licensing failed to provide explanations for each redaction, also entitling him to penalties; and (4) the trial court erred in failing to accept deposition transcripts for filing in support of his PRA claim.

¶2 We hold that (1) Licensing failed to respond to Gronquist's request within the statutory time frame, (2) none of the redacted information was exempt under the statutes cited by Licensing at the time Gronquist made his

---

[*] Judge Marywave Van Deren is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1] Ch. 42.56 RCW.

PRA request, (3) Licensing failed to provide timely and adequate explanations for the redactions, and (4) the trial court erred when it refused to file Gronquist's deposition transcripts.

¶3 We further hold that Licensing wrongfully withheld the redacted information and, thus, Gronquist was entitled to an award of costs and penalties, and we remand this matter to the trial court to determine that award. We also remand this matter to the trial court for it to accept for filing, and for its consideration in determining the award of costs and penalties, the deposition transcripts Gronquist attempted to file in 2010, and again in 2011, at our direction. Because the responsibility for the master business license applications was transferred from Licensing to the Department of Revenue on July 1, 2011, we do not rule on Revenue's duty to produce the records because the issue is not properly before us.

## FACTS

¶4 In a letter dated July 20, 2009, Gronquist, who at the time was an inmate at the Monroe Correctional Complex, submitted a request to Licensing under the PRA requesting the master business license application[2] for a company called "Maureen's House Cleaning." Clerk's Papers (CP) at 186. Licensing responded in a letter dated July 31, 2009, in

---

[2] Master business license applications are administered by Washington's business license center. Ch. 19.02 RCW. The center is responsible for "[d]eveloping and administering a computerized one-stop master license system capable of storing, retrieving, and exchanging license information with due regard to privacy statutes, as well as issuing and renewing master licenses in an efficient manner." RCW 19.02.030(2)(a). The service collects license applicants' information in an application and then seeks approval of the application from the agency that has authority to issue the license. RCW 19.02.070. At the time Gronquist made his PRA request, Licensing administered the master license service, but on July 1, 2011, the service was transferred from Licensing to Revenue. LAWS OF 2011, ch. 298, § 1 (included in the notes following RCW 19.02.020).

which it provided Gronquist with the requested application with certain information redacted.[3]

¶5 Licensing redacted much of the application without providing a statutory basis for the redactions. These redactions included the (1) business telephone number; (2) business electronic mail address; (3) owner's home address, date of birth, Social Security number, home telephone number, marital status, and bank; (4) percentage of the business owned by the applicant; (5) business's estimated gross annual income; (6) business activities performed; (7) products or services provided; and (8) existence of or plans to have employees. Licensing also redacted information about whether the owner bought, leased, or acquired an existing business, or purchased or leased any fixtures or equipment on which he or she did not pay sales tax, and whether the business was located within the Seattle city limits.

¶6 In February or March 2010, Gronquist sued Licensing, alleging that Licensing violated the PRA by providing a redacted copy of the application. He asked the trial court to compel disclosure of an unredacted copy of the application and asked for statutory costs and penalties under the PRA. In a letter dated March 1, 2010, after Licensing received Gronquist's complaint, Licensing wrote Gronquist a letter stating the reasons for redacting the information from the application.[4] The letter stated:

Applications contain some information that is exempt from public disclosure pursuant to the statutes governing the agencies on whose behalf the information is collected. The statutory

[3] The record does not clearly reflect when Licensing received Gronquist's request. The letter responding to his request stated that Licensing received the letter on July 31, 2009. But an administrator of the master licensing service stated in a declaration filed in support of Licensing's summary judgment motion that her office received the letter "[o]n or about July 21, 2009." CP at 115.

[4] The timing of Gronquist's suit and the date Licensing provided an explanation for the redactions are not clear from the record. The date stamp on the complaint says it was filed on March 9, 2010, but Licensing's brief, without citation, states that Gronquist filed his suit on February 19, 2010. The date above the signature on the complaint is February 1, 2010. But there is no dispute that Licensing failed to provide an explanation for its redactions until after Gronquist filed suit.

basis for the exemptions is found at RCW 50.13.020 (Employment Security [Department]), RCW 51.16.070 (Department of Labor and Industries) and RCW 82.32.330 ([Revenue]). It was pursuant to the requirement of these statutes that portions of the [application] for Maureen's House Cleaning were redacted.

CP at 205.

¶7 On October 21, 2010, Gronquist filed a motion to show cause why an unredacted copy of the application should not be provided and why he should not be awarded costs and penalties under the PRA. On November 4, 2010, Gronquist filed a motion for sanctions against Licensing, alleging that it intentionally violated the PRA, lied to Gronquist, and failed to properly train and supervise its employees. On November 19, Licensing filed a summary judgment motion, claiming that it properly redacted the information and ultimately provided Gronquist with an explanation for the redactions; thus, Gronquist was not entitled to costs and penalties.

¶8 On October 15, 2010, Gronquist mailed three deposition transcripts to the trial court for filing to support his show cause motion, his motion for sanctions, and his response to Licensing's motion for summary judgment. The trial court clerk returned the transcripts to Gronquist with a letter stating that the depositions could not be filed, citing CR 32(a).[5] Gronquist returned the depositions to the clerk, asserting that the depositions should be filed under CR 32(a) and that he needed them to support his upcoming motions. The clerk responded that the depositions had been forwarded to the presiding judge in Gronquist's case and clarified the clerk's office's previous letter to Gronquist:

---

[5] CR 32(a) provides in relevant part:

**Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with [certain] provisions.

"CR 32(a) states, 'At the trial or upon the hearing of a motion . . .' [y]ou may, at the time of your hearing, request the judge to publish the deposition. If the judge grants your request, the deposition will be filed into the court file. It cannot, however, be filed until such time." CP at 218.

¶9 On December 21, 2010, the trial court ordered Licensing to submit the unredacted application for in camera review. Licensing submitted the document to the trial court accompanied by the following "explanation for redaction":

> The . . . application in question has four pages. The first page is not redacted. On the second page, all identifying information is redacted except for business type, i.e.[,] sole proprietorship, starting date, name of business, owner and business address. This is pursuant to Revenue statute[ ] [RCW] 82.32.330(1)(k)[6] . . . . Marital status and social security number were also withheld under the Employment Security general confidentiality statute RCW 50.13.020 . . . . On the third page information about the owner's income, services sales tax, banking institution, and employee status is withheld pursuant to the strictures of [RCW] 82.32.330 referenced above.
>
> Scrutiny of the un-redacted and redacted document reveal[s] no errors. No information was redacted that should have been included. Information about any employees is redacted pursuant to RCW 51.16.070[,] the Labor and Industries statute . . . . The last page is not redacted.

CP at 145.

¶10 The trial court granted Licensing's summary judgment motion, and its order stated:

---

[6] RCW 82.32.330(1)(k) does not exist in any version of the statute; thus, it appears that Licensing's reference to this statute was a typographical error. But RCW 82.32.330(3)(k) provides that RCW 82.32.330 does not prevent Revenue from

> [d]isclosing, in a manner that is not associated with other tax information, the taxpayer name, entity type, business address, mailing address, revenue tax registration numbers, reseller permit numbers and the expiration date and status of such permits, North American industry classification system or standard industrial classification code of a taxpayer, and the dates of opening and closing of business.

The court reviewed in camera the unredacted copies of documents that we[re] provided to . . . Gronquist with redactions. The court is satisfied that the redacted material is not subject to disclosure, but is protected as confidential by RCW 50.13.020, RCW 51.16.070, RCW 82.32.330, and the [PRA], RCW 42.56.

In this case, [Licensing] produced materials for [Gronquist] with redactions. At the time of production, there was no accompanying brief explanation of the reason for the redactions. No request for an explanation was made. When the lawsuit was filed identifying [Gronquist]'s issue, [Licensing] provided an explanation for the redactions. The Court is aware of the recent decision in [*Sanders v. State*], 169 Wn.2d 827, 240 P.3d 120 (2010). The Court finds that no information was wrongfully withheld in this case. The court finds that the initial failure of [Licensing] to provide the explanation for the redactions was not a violation of the [PRA] giving rise to penalties.

CP at 163-64.

¶11 On March 18, 2011, Gronquist filed a notice of appeal. We informed Gronquist and Licensing that the trial court's summary judgment order did not comply with RAP 9.12,[7] which requires that all evidence called to the attention of the trial court be specified in the order before that order can be appealed. The letter directed Gronquist to obtain a complying order from the trial court. On May 6, 2011, the trial court issued a supplemental order granting Licensing's motion for summary judgment that stated that two documents were called to its attention when deciding

---

[7] RAP 9.12 provides:

SPECIAL RULE FOR ORDER ON SUMMARY JUDGMENT

On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. Documents or other evidence called to the attention of the trial court but not designated in the order shall be made a part of the record by supplemental order of the trial court or by stipulation of counsel.

Licensing's summary judgment motion: a redacted and an unredacted copy of the application.[8]

¶12 After the trial court granted Licensing's summary judgment motion, the legislature transferred responsibility for master license applications and all records and personnel involved in the master license applications from Licensing to Revenue. LAWS OF 2011, ch. 298, § 2 (included in the notes following former RCW 19.02.020 (2011)). The transfer became effective on July 1, 2011. LAWS OF 2011, ch. 298, § 43 (included in the notes following former RCW 19.02.020).

¶13 On June 6, 2011, Gronquist filed a designation of clerk's papers, asking the trial court to transfer the deposition transcripts that he had sent to the superior court to this court. The trial court did not transfer the deposition transcripts because they were not part of the court file. Gronquist filed a motion asking us to compel the superior court to transfer the depositions to this court. We ruled that the depositions "are not on file with the clerk's office. Gronquist must seek relief in the trial court, directing its clerk to file the depositions, before they can be part of the record in this court. Gronquist is granted a 45-day extension of time to do the above and file an amended brief." Ruling on Mot. to Show Cause, *Gronquist v. Dep't of Licensing*, No. 41897-5-II (Wash. Ct. App. Sept. 7, 2011).

¶14 In October 2011, Gronquist filed a motion to settle the record in the trial court, asking that the trial court allow him to file the deposition transcripts. The trial court denied the motion, stating, "[T]he Plaintiff did not make

---

[8] The supplemental order provided:

THE DOCUMENTS CALLED TO THE COURT'S ATTENTION WERE:

Two copies of a[n application] for "Maureen's Housecleaning [sic]." One copy was provided to . . . Gronquist with redactions. Another copy of the same document was lodged with the court for confidential in camera review pursuant to Thurston County Local Civil Rule 16 (c) (2). The court is satisfied that the redacted material is not subject to disclosure, but is protected as confidential by RCW 50.13.020, RCW 51.16.070, [and] RCW 82.32.330, and the [PRA], RCW 42.56.

CP at 167.

deposition transcripts part of the record[,] so the depositions were <u>not</u> considered by the court." CP at 221.

¶15 Gronquist timely appeals both the trial court's summary judgment in favor of Licensing and the trial court's denial of his motion to settle the trial record by filing the deposition transcripts.

## ANALYSIS

¶16 Gronquist argues that the trial court erred when it granted Licensing's summary judgment motion because (1) Licensing failed to respond within five business days of his PRA request, thus entitling him to penalties; (2) the information Licensing redacted from the application was not exempt from disclosure under the PRA; (3) Licensing failed to provide a proper explanation for the redactions, also entitling him to penalties; and (4) the trial court failed to properly file the deposition transcripts he submitted in support of his PRA claim.

¶17 We agree with Gronquist that some of the redacted information was not exempt when Licensing answered his request and that Licensing did not timely respond and failed to provide explanations for its redactions, thereby silently withholding the information until after Gronquist filed his lawsuit. We remand to the trial court to determine an appropriate award of costs and penalties after consideration of the entire record, including the depositions to be filed by the trial court at our direction. Because all licensing records pertaining to business license applications, both public and not public, were transferred to Revenue and Revenue is now statutorily responsible for business license applications, we do not rule on Revenue's duty to produce the application to Gronquist because the matter is not properly before us.

I. STANDARD OF REVIEW

¶18 We review agency action under the PRA de novo. *Neigh. Alliance of Spokane County v. Spokane County*,

172 Wn.2d 702, 715, 261 P.3d 119 (2011) (citing RCW 42.56.550(3)). In a PRA case, the trial court "may conduct a hearing based solely on affidavits," and where, as here, the "case presents a question of law which was decided by the trial court solely on the basis of documentary evidence and legal arguments, review is de novo." RCW 42.56.550(3); *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 744, 958 P.2d 260 (1998).

¶19 We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Weden v. San Juan County*, 135 Wn.2d 678, 689, 958 P.2d 273 (1998). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Although we review agency action under the PRA and summary judgment orders de novo, we review the amount of a trial court's penalty award under the PRA for abuse of discretion. *Double H, LP v. Dep't of Ecology*, 166 Wn. App. 707, 712, 271 P.3d 322, *review denied*, 174 Wn.2d 1014 (2012).

II. Public Records Act

¶20 The PRA "requires all state and local agencies to disclose any public record upon request, unless the record falls within certain very specific exemptions." *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 250, 884 P.2d 592 (1994) (*PAWS*).[9] "The PRA is a strongly worded mandate for broad disclosure of public records." *Neigh. Alliance*, 172 Wn.2d at 714. In light of this purpose, the PRA is liberally construed in favor of disclosure and its exemptions are narrowly construed. RCW 42.56.030.

¶21 Under the PRA, agencies must respond within five business days of receipt of a public records request.

---

[9] In *PAWS*, our Supreme Court interpreted and applied former chapter 42.17 RCW, the public disclosure act (PDA). Effective July 1, 2006, the PDA was renamed the PRA and was recodified as chapter 42.56 RCW. Laws of 2005, ch. 274, §§ 102-103. Although our Supreme Court interpreted the former PDA in *PAWS*, we refer to the current PRA when discussing the case because the relevant provisions are identical.

RCW 42.56.520; *West v. Thurston County*, 168 Wn. App. 162, 182, 275 P.3d 1200 (2012). But an agency may withhold all or part of a record if it falls within an exemption under the PRA "or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). "[T]he PRA's 'other statute' exemption allows for a separate statute to preclude disclosure of 'specific information' or entire 'records.' " *Ameriquest Mortg. Co. v. Office of Att'y Gen.*, 170 Wn.2d 418, 440, 241 P.3d 1245 (2010) (quoting RCW 42.56.070(1)). But if another exemption statute and the PRA conflict, the exemption provisions of the PRA govern. RCW 42.56.030.

¶22 If an agency refuses to permit public inspection of particular records, "[t]he burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.56.550(1). Part of this burden requires an agency withholding records to "include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3).

¶23 Our Supreme Court has characterized failure to provide an explanation as "silent withholding," which occurs when "an agency . . . retain[s] a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld." *PAWS*, 125 Wn.2d at 270. Providing the required explanation is important not only because it informs the requester why the documents are being withheld but also because failure to provide the explanation "vitiate[s]" "the reviewing court's ability to conduct the statutorily required de novo review." *PAWS*, 125 Wn.2d at 270; *see also Sanders*, 169 Wn.2d at 846 ("Claimed exemptions cannot be vetted for validity if they are unexplained.").

¶24 To comply with the PRA, the agency must provide an explanation that specifically describes how the claimed exemption applies to the withheld information because "[a]llowing the mere identification of a document and the claimed exemption to count as a 'brief explanation' would render [the PRA's] brief-explanation clause superfluous." *Sanders*, 169 Wn.2d at 846. One method by which an agency can properly identify withheld information is with a privilege log. *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 538-39, 199 P.3d 393 (2009) (noting WAC 44-14-04004(4)(b)(ii)). The log should include the type of information that would enable a records requester to make a threshold determination of whether the agency properly claimed the privilege. WAC 44-14-04004(4)(b)(ii); *Rental Hous. Ass'n*, 165 Wn.2d at 539.

¶25 The PRA requires the trial court to award attorney fees and costs to a party who "prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time." RCW 42.56.550(4). A PRA claimant "prevails" against an agency if the agency wrongfully withheld the documents. *Germeau v. Mason County*, 166 Wn. App. 789, 811, 271 P.3d 932, *review denied*, 174 Wn.2d 1010 (2012).

¶26 "In addition, it shall be within the discretion of the court to award . . . an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy [a wrongfully withheld] public record."[10] Former RCW 42.17-.340(4) (2005), *recodified as* RCW 42.56.550(4) (LAWS OF 2005, ch. 274, § 103 (effective July 1, 2006)). "A PRA penalty determination involves a two-step inquiry: (1) determining

---

[10] Before July 22, 2011, the PRA required courts to impose a minimum per-day penalty of $5. Former RCW 42.17.340(4) (2005); LAWS OF 2011, ch. 273, § 1. Courts may now impose a daily penalty ranging from $0 to $100. RCW 42.56.550(4); *West*, 168 Wn. App. at 188 n.29.

the appropriate daily penalty amount; and (2) calculating the number of days the public agency denied the party access to the records." *West*, 168 Wn. App. at 188.

¶27 We review the trial court's penalty award for abuse of discretion. *Double H*, 166 Wn. App. at 712-13. But because the penalty period is "strictly defined by the number of days a person has been denied a record after it should have been produced," it is a matter of law that we review de novo. *Double H*, 166 Wn. App. at 712-13. "[T]he PRA requires the agency to pay a penalty for each day the requester is unable to inspect or copy a nonexempt record," and the penalty period includes the amount of time that any suit relating to production of the records was pending. *Sanders*, 169 Wn.2d at 863-64.

## A. Delayed Response to Gronquist's Public Records Request

¶28 Gronquist contends that Licensing violated the PRA because Licensing failed to respond to his PRA request within five business days. Licensing responds that we should decline to address Gronquist's claim because he raises it for the first time on appeal. Licensing also contends that even if we were to address this issue, "[t]he uncontroverted evidence in the record is that Gronquist's letter arrived on the 31st of July, and was responded to timely on that date." Licensing misrepresents the record in both of these arguments.

¶29 First, the evidence surrounding Licensing's receipt of Gronquist's request was not "uncontroverted." Although the letter responding to Gronquist's request provides that Licensing received it on July 31, 2009, Licensing attached the declaration of one of its senior administrators to both its summary judgment motion and its response to Gronquist's show cause motion that stated, "On or about July 21, 2009, our office received a request for the business license application for Maureen's Housecleaning [sic] from . . . Gronquist." CP at 115.

¶30 Second, Gronquist raised the timeliness issue at the trial court. Gronquist was not aware of the declaration stating that Licensing actually received the letter on July 21 instead of July 31 until he received Licensing's response to his motion to show cause and Licensing's summary judgment motion. After receipt of that information, Gronquist addressed Licensing's late response in both his reply in support of his show cause motion and his response to Licensing's summary judgment motion.

¶31 RCW 42.56.520 requires agencies to respond to public records requests within five business days. Here, Licensing responded after eight business days. Accordingly, Licensing violated RCW 42.56.520 when it failed to provide Gronquist with the application within the statutory time frame.

B. Exemptions—Wrongful Withholding

¶32 Gronquist also argues that the trial court erred when it concluded that the information it withheld was properly redacted from the application. Licensing responds that RCW 82.32.330, RCW 50.13.020, and RCW 51.16.070 authorized its redacting the business license applicant's home address, home telephone number, business telephone number, income information, employee information, banking information, and marital status.[11]

¶33 Licensing's letter to Gronquist after he filed his claim for violation of the PRA identified Revenue statute RCW 82.32.330, Employment Security Department statute RCW 50.13.020, and Department of Labor and Industries statute RCW 51.16.070 as justification to support its redactions from the application without specifying which statute justified each redaction. In Licensing's explanation to the trial court for the redactions when it submitted the unredacted application for in camera review, Licensing

---

[11] Licensing fails to assert on appeal that any other information in the application was properly withheld.

attempted to identify the particular portions of redacted information that correspond with the cited statutes.

¶34 But Licensing has failed to meet its burden to show that the information was covered by an exemption for at least two of the redactions. Licensing's explanation fails to mention two pieces of redacted information: (1) the type of business activities performed in Washington and (2) whether the owner bought, leased, or acquired all or part of an existing business. Thus, the information provided by Licensing is insufficient to enable a records requester to make a threshold determination of whether the agency properly claimed the privilege. WAC 44-14-04004(4)(b)(ii); *Rental Hous. Ass'n*, 165 Wn.2d at 539. Because Licensing has failed to assert why any exemption applies to these redactions, it has failed to meet its burden of proving why it redacted that information, and the trial court erred by granting summary judgment to Licensing. RCW 42.56.550(1).

¶35 We turn to the remaining redactions to determine whether the statutes cited by Licensing support withholding that information.

### 1. RCW 82.32.330

¶36 Licensing's explanation to the trial court stated that RCW 82.32.330 exempted the following information: (1) the business telephone number, (2) whether the business was inside the city limits, (3) the owner's home address, (4) the owner's date of birth, (5) the owner's percentage of ownership of the business, (6) the owner's home telephone number, (7) the owner's income, (8) the services provided by the owner, (9) whether the owner purchased or leased any fixtures or equipment on which the owner did not pay sales tax, (10) the owner's banking institution, and (11) whether the owner had or planned to have employees.

¶37 RCW 82.32.330(2) provides, "Returns and tax information are confidential and privileged, and except as au-

thorized by this section, neither the department of revenue nor any other person may disclose any return or tax information."

> "Tax information" means (i) a taxpayer's identity,[12] (ii) the nature, source, or amount of the taxpayer's income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability deficiencies, overassessments, or tax payments, whether taken from the taxpayer's books and records or any other source, (iii) whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, (iv) a part of a written determination that is not designated as a precedent and disclosed pursuant to RCW 82.32.410, or a background file document relating to a written determination, and (v) other data received by, recorded by, prepared by, furnished to, or collected by the department of revenue with respect to the determination of the existence, or possible existence, of liability, or the amount thereof, of a person under the laws of this state for a tax, penalty, interest, fine, forfeiture, or other imposition, or offense. However, data, material, or documents that do not disclose information related to a specific or identifiable taxpayer do not constitute tax information under this section. Except as provided by RCW 82.32.410, nothing in this chapter requires any person possessing data, material, or documents made confidential and privileged by this section to delete information from such data, material, or documents so as to permit its disclosure.

RCW 82.32.330(1)(c).

 ██ ¶38 Gronquist notes that the statute Licensing cited in support of the exemptions authorizes disclosure of "tax information that is also maintained by another Washington state or local governmental agency as a public record available for inspection and copying under the [PRA]." RCW 82.32.330(3)(*l*). At the time the information was redacted from the application, Licensing was responsible for administering the application, not Revenue. LAWS OF 2011, ch. 298,

---

[12] " 'Taxpayer identity' means the taxpayer's name, address, telephone number, registration number, or any combination thereof, or any other information disclosing the identity of the taxpayer." RCW 82.32.330(1)(e).

§ 1 (included in the notes following RCW 19.02.020). Thus, even if the application contained "tax information," RCW 82.32.330(3)(*l*) authorizes disclosure of the information by another agency, in this case Licensing.

¶39 Although Licensing failed to cite the PRA in its explanations to Gronquist, it now argues that the PRA itself authorizes application of the Revenue statute to the redacted information at issue here. RCW 42.56.230(4), found within the PRA's list of exemptions for "personal information," provides that the following information is exempt from public disclosure:

> Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would: (a) Be prohibited to such persons by RCW 84.08.210, 82.32.330, 84.40.020, 84.40.340, or any ordinance authorized under RCW 35.102.145; or (b) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer.

¶40 Gronquist contends that the PRA exemption applies only to " '[i]nformation required of any taxpayer in connection with the assessment or collection of any tax' " and, thus, does not apply to the information in the application because "[m]aster [l]icense [a]pplications have no connection with the assessment or collection of taxes." Br. of Appellant at 27 (quoting RCW 42.56.230(4)). Gronquist is correct.

¶41 Our Supreme Court has held that business license applications are not a substitute for tax returns. *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 56, 156 P.3d 185 (2007). In *Ford Motor Co.*, Ford sought to take advantage of a shorter statute of limitations period for collection of taxes that could be used if a taxpaying entity had filed tax returns for the payment period at issue. 160 Wn.2d at 55. Ford argued that although it had not filed tax returns for the years in question, it had filed annual business license applications; thus, the shorter statute of limitations should

apply. *Ford Motor Co.*, 160 Wn.2d at 55. Our Supreme Court rejected Ford's contention, holding that

> the annual business license application is exactly that—a license application, not a return. It is designed to license a company to engage in business, not to provide financial information for taxation purposes. . . . [A]lthough the license applications may request some financial data, they do not require the provision of sufficient financial data to allow for a computation of the appropriate tax.

*Ford Motor Co.*, 160 Wn.2d at 56. Because business license applications do not "provide financial information for taxation purposes," we hold that the information contained in the application was not "required . . . in connection with the assessment or collection of any tax." *Ford Motor Co.*, 160 Wn.2d at 56; RCW 42.56.230(4). Accordingly, Licensing failed to meet its burden of proving that the information it redacted under RCW 82.32.330 was exempt from disclosure.[13]

### 2. RCW 50.13.020

¶42 Licensing's explanation to the trial court also stated that RCW 50.13.020 exempted (1) the owner's Social Security number and (2) the owner's marital status. As a preliminary matter, Gronquist does not contest the redaction of the business owner's Social Security number from the application. Thus, we need determine only whether RCW 50.13.020 exempts the owner's marital status from disclosure. RCW 50.13.020 provides:

> Any information or records concerning an individual or employing unit obtained by [Employment Security] pursuant to the

---

[13] Even if we were to hold that the information in the application was connected with the assessment or collection of taxes, Gronquist argues, and we agree, that RCW 82.32.330 does not exempt all of the information Licensing claims. Applying RCW 82.32.330's definition of "tax information" to the claimed exemptions here reveals that only the owner's home and business telephone numbers, home address, and estimated gross annual income would be exempt if the statute applied. RCW 82.32.330(2). Licensing fails to demonstrate how RCW 82.32.330 protects any of the other information it claims was exempt.

administration of this title or other programs for which [Employment Security] has responsibility shall be private and confidential, except as otherwise provided in this chapter. . . . Information or records may be released by [Employment Security when the release is:

(1) Required by the federal government in connection with, or as a condition of funding for, a program being administered by [Employment Security]; or

(2) Requested by a county clerk for the purposes of RCW 9.94A.760.

¶43 The PRA also authorizes exemptions under this statute, although Licensing failed to cite the PRA provision in its explanation to Gronquist or to argue it on appeal. One PRA exemption provides, "Records maintained by [Employment Security] and subject to chapter 50.13 RCW if provided to another individual or organization for operational, research, or evaluation purposes are exempt from disclosure under this chapter." RCW 42.56.410. Thus, the PRA authorizes application of RCW 50.13.020 to records "maintained by" Employment Security, and the Employment Security statute protects information "obtained by" Employment Security. RCW 42.56.410; RCW 50.13.020. The application here was maintained and obtained by Licensing, not Employment Security. Accordingly, neither RCW 50.13.020 nor the PRA statute authorizing its application protect the owner's marital status in the application here.

¶44 Moreover, Gronquist argues, and we agree, that "[r]egardless of what agency maintains the record, RCW 50.13.020 simply does not apply to the information contained in the [application]." Br. of Appellant at 34. For the requirements of the Employment Security Act, Title 50 RCW, to apply, an entity must be an " 'employer,' " meaning that it must have "persons in 'employment.' " *Language Connection, LLC v. Emp't Sec. Dep't*, 149 Wn. App. 575, 581, 205 P.3d 924 (2009) (quoting RCW 50.04.080). Here, Maureen's House Cleaning is a sole proprietorship and its application states that it has no employees. Accordingly, the

Employment Security Act and the confidentiality statute therein do not apply to the application here.

### 3. RCW 51.16.070

¶45 Licensing's explanation to the trial court also provided that RCW 51.16.070, related to Labor and Industries, exempted information "about any employees." CP at 145. RCW 51.16.070(2) provides, "Information obtained from employing unit records under the provisions of this title shall be deemed confidential and shall not be open to public inspection."

¶46 Although Licensing fails to provide the particular redaction that it claims is exempt from disclosure under this statute, the only redacted information regarding employees on the application is whether the business has employees. Assuming that RCW 51.16.070 is Licensing's justification for that redaction, Licensing has failed to meet its burden to prove that an exemption applies under the PRA.

¶47 Gronquist argues, and we again agree, that Title 51 RCW does not apply to the application because Maureen's House Cleaning is a sole proprietorship without employees. "Title 51 RCW governs all aspects of a worker's remedy against his or her employer for injuries sustained in the course of employment." *Rafn Co. v. Dep't of Labor & Indus.*, 104 Wn. App. 947, 949, 17 P.3d 711 (2001) (citing RCW 51.04.010).

¶48 RCW 51.16.060 requires all employers, subject to some exceptions, to pay quarterly premiums to the state industrial insurance fund. *Rafn*, 104 Wn. App. at 949. Sole proprietors are exempted from this mandatory coverage. RCW 51.12.020(5). Maureen's House Cleaning is a sole proprietorship and declined optional industrial insurance coverage. Accordingly, Title 51 RCW and its confidentiality provision do not apply to the information in the application.

¶49 Moreover, even were we to apply the Labor and Industries confidentiality statute, it does not apply to the

information in the application. RCW 51.16.070(2) provides that "[i]nformation obtained from employing unit records" is confidential. But the application is not an "employing unit record" because Maureen's House Cleaning is not an "employing unit." RCW 50.04.090(1) defines an "employing unit" as "any individual or any type of organization . . . which has or subsequent to January 1, 1937, had in its employ or in its 'employment' one or more individuals performing services within this state."

¶50 Because Licensing failed to meet its burden to show that it properly exempted any of this particular information from the application, we hold that the trial court erred when it concluded that Licensing's redactions were proper exemptions under the PRA.[14]

¶51 Under the confidentiality statutes cited by Licensing, the information redacted in the application was largely not exempt. Thus, Gronquist should have been the prevailing party at the trial court and, as such, was entitled to costs and penalties. RCW 42.56.550(4).

---

[14] We do not hold that no federal, state, or local exemptions apply to requests for information from licensing applications. For example, the PRA contains multiple exemptions pertaining to licensing, none of which apply to the licensing application at issue here. RCW 42.56.240(4) (concealed pistol licenses), .250(1) (examination data used to administer a license), .270(15) (fuel licenses), .340 (membership lists in timeshares/condominiums regulated by Licensing), .430(3) (fish and wildlife licenses), .450 (check cashers and sellers licensing applications).

Licensing also appears to assert, without argument or citation to authority, that its memoranda of understanding with Employment Security, Labor and Industries, and Revenue provide an independent basis for the redactions. But the memoranda of understanding protect only information that Licensing obtains *from* other agencies, not information that Licensing obtains *for* other agencies. Moreover, Licensing cannot create its own exemptions to public disclosure through a multiagency agreement. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 137, 580 P.2d 246 (1978) ("[A]n agency's promise of confidentiality or privacy is not adequate to establish the nondisclosability of information; promises cannot override the requirements of the disclosure law.").

## C. No or Inadequate and Untimely Explanation for Redactions

¶52 Gronquist further argues that Licensing violated the PRA by failing to provide him with a proper and timely explanation for its redactions. We agree.

¶53 An agency withholding records under a PRA exemption must "include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3). Here, Licensing failed to give any kind of explanation when it sent the redacted application to Gronquist. Clearly, failure to provide any of the information required by RCW 42.56.210(3) was a violation of the PRA. *See Citizens for Fair Share v. Dep't of Corr.*, 117 Wn. App. 411, 431, 72 P.3d 206 (2003) (failure to provide requester with specific exemption and explanation "clearly violated" former RCW 42.17.310, *recodified as* RCW 42.56.210 (LAWS OF 2005, ch. 274, § 103 (effective July 1, 2006))).

¶54 Licensing contends that although it failed to provide Gronquist with an explanation in its response to his request for the application, it did not violate the PRA because it eventually provided him with an explanation after he filed his lawsuit. But although Licensing provided statutory authority for the exemptions after Gronquist sued Licensing, it failed to specify what information had been redacted, which exemptions applied to each redaction, or how those exemptions applied. Again, Licensing failed to comply with the requirements of RCW 42.56.210(3). *Sanders*, 169 Wn.2d at 846.

¶55 Licensing's ultimate explanation for the redactions that it submitted with the unredacted application for in camera review by the trial court also failed to meet the PRA requirements. In this explanation, Licensing did connect some of the redacted information and the statutory exemptions. But Licensing failed to identify each piece of redacted

information it claims was exempt under a particular statute. And Licensing gave no reason for withholding the type of business activity performed in Washington and whether the owner bought, leased, or acquired all or part of an existing business. Licensing's failure to provide the mandatory link between the redacted information and a statutory exemption not only fails to comply with RCW 42.56.210(3) but also fails to provide this court with a record that we can meaningfully review. *Sanders*, 169 Wn.2d at 846.

¶56 Moreover, Licensing's explanation of its redactions on appeal differs from the explanation Licensing offered to the trial court in two ways. First, the particular redacted information Licensing claims was exempt differs. At the trial court, Licensing claimed that all redacted information was exempt under particular statutes except the type of business activities performed in Washington and whether the owner bought, leased, or acquired all or part of an existing business. In contrast, Licensing argues on appeal that only the owner's home address, home telephone number, business telephone number, income information, employee information, banking information, and marital status are exempt, leaving the remaining redacted information unexplained. Second, the statutes Licensing cited in support of the redactions differ. Licensing claimed at the trial court that the information in the application was exempt under RCW 82.32.330, RCW 50.13.020, and RCW 51.16-.070. On appeal, Licensing cited these statutes but for the first time also cited the PRA's exemption for "[p]ersonal information," RCW 42.56.230.

¶57 And although marked as an "explanation" at the trial court, Licensing failed to explain how any of the exemptions apply to the particular information redacted. Moreover, Licensing did not independently provide this particular explanation to Gronquist but submitted the explanation to the trial court with the unredacted application for in camera review. Accordingly, Licensing violated the PRA because it failed to provide an adequate explanation for the redactions at any stage. *Sanders*, 169 Wn.2d at 846.

## D. Costs and Penalties

¶58 Gronquist argues that he should be awarded costs and penalties because (1) Licensing exceeded the statutory time frame for responding to his request; (2) the redacted information in the application was not exempt and, thus, Licensing wrongfully withheld the information; and (3) Licensing failed to properly explain the redactions.

¶59 The PRA requires the trial court to award attorney fees and costs to a party who "prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time." RCW 42.56.550(4). A PRA claimant "prevails" against an agency if the agency wrongfully withheld the documents. *Germeau*, 166 Wn. App. at 811. "In addition, it shall be within the discretion of the court to award . . . an amount not less than five dollars and not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy [a wrongfully withheld] public record." Former RCW 42.17.340(4).

¶60 Here, Licensing provided a late response to Gronquist's PRA request, provided no explanation of the redactions until after being sued, failed to provide an adequate explanation of the redactions at any stage, and redacted information from the application that was not exempt from disclosure. Accordingly, Gronquist should have been the prevailing party below and was entitled to costs and penalties. RCW 42.56.550(4); *Germeau*, 166 Wn. App. at 811. Because the amount of the penalty is within the trial court's discretion, we remand to the trial court to determine the amount of the penalty.

¶61 Gronquist also argues that Licensing's failure to provide an explanation for the redactions violated the PRA and entitles him to penalties. Licensing responds that the

trial court did not abuse its discretion in failing to award penalties because (1) Licensing eventually provided an explanation and (2) the information was not wrongfully withheld; thus, Gronquist is not entitled to penalties because *Sanders* does not authorize freestanding penalties for failure to properly respond to a PRA request.

¶62 Licensing is correct that "the penalty section [of the PRA] does not expressly authorize a freestanding penalty for the failure to provide a brief explanation." *Sanders*, 169 Wn.2d at 860. But "although the PRA does not expressly sanction a *separate* penalty for a brief explanation violation, the violation may *aggravate* the penalty for wrongfully withholding a record." *Sanders*, 169 Wn.2d at 860-61. Moreover, failure to provide an explanation is "silent withholding," which occurs when "an agency . . . retain[s] a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld." *PAWS*, 125 Wn.2d at 270.

¶63 Licensing did not attempt to explain its redactions until after Gronquist sued Licensing under the PRA. The purpose of the penalty provision in the PRA is to " 'discourage improper denial of access to public records.' " *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 429-30, 98 P.3d 463 (2004) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 140, 580 P.2d 246 (1978)).[15] Under these circumstances, on remand the trial court may review all the evidence, including the timing of Licensing's response and Licensing's failure to properly explain the redactions, to determine the penalty amount.

III. MOTION TO SETTLE THE RECORD

¶64 Gronquist next argues that the trial court erred when it denied his motion to settle the record. We agree.

---

[15] Our Supreme Court in *Yousoufian* discussed former RCW 42.17.340(4) in the PDA, but because that statute is identical to the current RCW 42.56.550(4) in the PRA, we refer to the current version of the statute.

¶65 On two occasions, Gronquist mailed deposition transcripts to the trial court clerk in support of his show cause motion, his motion for sanctions, and his summary judgment motion. He claimed that the depositions contained information important to his case because they revealed that Licensing did not know why the redacted information was exempt.

¶66 The first time Gronquist attempted to file the depositions, the trial court clerk returned the transcripts to Gronquist, and on the second occasion, the clerk refused to file them but transferred them to the trial court judge, who apparently did not accept them for filing since they were not part of the trial court record that Gronquist asked that we review. At our direction, Gronquist made a third request that the trial court file the deposition transcripts, but the court again refused his request.

¶67 In refusing to file the depositions, the trial court clerk told Gronquist that under CR 32(a), "You may, at the time of your hearing, request the judge to publish the deposition. If the judge grants your request, the deposition will be filed into the court file. It cannot, however, be filed until such time." CP at 218. CR 32(a) provides in relevant part:

> **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with [certain] provisions.

¶68 After Gronquist filed his appeal and asked that we review the deposition transcripts, we directed Gronquist to seek relief in the trial court so they became part of the trial court's file for our review. Gronquist complied, but the trial court denied his motion to settle the record, stating, "[T]he plaintiff did not make deposition transcripts part of the

record so the depositions were <u>not</u> considered by the court." CP at 221.

¶69 Gronquist argues that no authority supports the trial court's interpretation of CR 32(a) to require that Gronquist "publish" the depositions. We recognize that RCW 2.32.050(4) requires the superior court clerk to "file all papers delivered to him or her . . . in any action or proceeding in the court as directed by court rule or statute." And although under CR 5(i), depositions are generally not to be filed with the trial court, they may be filed "for use in a proceeding or trial or on order of the court." Tegland has clarified the effect of CR 5(i): "The rule eliminates any notion of 'publishing' a deposition and . . . contemplate[s] that when a deposition is filed, the clerk will simply place it in the same public file containing the pleadings and related documents." 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: WASHINGTON HANDBOOK ON CIVIL PROCEDURE ch. 2, § 46.3 authors' cmt. at 417 (2012-13 ed.).

¶70 Tegland and Ende also note that in the Washington State Bar Association's (WSBA) comments to changes in the civil rules eliminating the "publishing" requirement, the WSBA stated that " 'portions of the [deposition] transcript can be filed in support of a motion at any time.' " 15A TEGLAND & ENDE, § 46.3 authors' cmt. at 417 (internal quotation marks omitted). Thus, we hold that the trial court erred by refusing to file Gronquist's depositions.

¶71 Although the trial court erred by failing to allow Gronquist to file the depositions, the depositions are unnecessary for our review. Determining whether the exemptions applied to the redacted information is a matter of statutory interpretation. And there were no disputed facts regarding Licensing's explanations for the redactions; thus, we are required only to determine as a matter of law whether those explanations were adequate. Finally, although there was a disputed factual issue regarding the date Licensing received Gronquist's PRA request, that issue was resolved by the record already before us.

¶72 But we order the trial court to file the depositions for two reasons. First, Gronquist alleges that the transcripts contain evidence that Licensing admitted that there is no statute that specifically exempts information contained in the application from public disclosure. Because we remand to the trial court to determine the penalty amount, the trial court must have the filed depositions to address Gronquist's claim that Licensing did not redact the application in good faith. Second, we direct the trial court to file the depositions Gronquist has attempted to file to provide a proper record should this matter require further review.[16]

IV. COSTS ON APPEAL

¶73 Gronquist also requests his costs on appeal under RAP 14.2. RAP 14.2 provides that an appellate court "will award costs to the party that substantially prevails on review." Because Gronquist substantially prevails here, we grant his request.

¶74 We hold that Licensing wrongfully withheld the application, and thus, we remand this matter to the trial court to determine an appropriate award of costs and penalties, based on our holdings that (1) Licensing failed to timely respond to Gronquist's PRA request; (2) Licensing asserted exemptions for many of the redactions, which exemptions we hold did not apply; and (3) Licensing withheld numerous portions of the requested application without providing any explanation for its redactions until after Gronquist filed his PRA claim. Because Revenue is the agency now responsible for the application, we do not rule on Revenue's duty to produce it.[17]

---

[16] Gronquist also argues that the trial court's failure to consider the evidence in his depositions and other evidence he submitted with his show cause motion was error and demonstrates that the trial court was "biased." Br. of Appellant at 20. He asks us to "remand the case back for a full and fair hearing before a different judge." Br. of Appellant at 20. But the trial court judge is now retired. Thus, Gronquist's case will presumptively be heard by a different judge on remand.

[17] Although we do not rule on Revenue's duty to produce the application, we note that at the time the legislature transferred responsibility for master license

¶75 We further hold that the trial court erred when it refused to file deposition transcripts that Gronquist asserts support his claim for penalties against Licensing. We remand this matter to the trial court and direct it to file the deposition transcripts Gronquist attempted to file in 2010 and again in 2011 at our direction. The deposition transcripts will then be available for the trial court's consideration in determining the amount of the penalties to be assessed against Licensing. Finally, we award Gronquist his costs incurred on appeal in an amount to be determined by our commissioner upon compliance with Title 14 RAP.

WORSWICK, C.J., concurs.

¶76 QUINN-BRINTNALL, J. (concurring in the result) — While I concur with my colleagues in believing that the Department of Licensing failed to respond to Derek Gronquist's request within the Public Record Act's (PRA), chapter 42.56 RCW, statutory time frame or provide timely and adequate explanations for the redactions it made from the requested records, some of the information in the requested master business license application should have been exempt from disclosure. Accordingly, I concur in the result only.

---

applications from Licensing to Revenue, it also adopted a confidentiality provision applicable to all information contained in licensing applications handled by Revenue. LAWS OF 2011, ch. 298, § 12. The current Revenue confidentiality statute provides:

> Licensing information is confidential and privileged, and except as authorized by this section, neither [Revenue] nor any other person may disclose any licensing information. Nothing in this chapter requires any person possessing licensing information made confidential and privileged by this section to delete information from such information so as to permit its disclosure.

RCW 19.02.115(2). The statute defines "licensing information" as

> any information created or obtained by [Revenue] in the administration of this chapter and chapters 19.80 and 59.30 RCW, which information relates to any person who: (i) Has applied for or has been issued a license or trade name; or (ii) has been issued an assessment or delinquency fee. Licensing information includes initial and renewal business license applications, and business licenses.

RCW 19.02.115(1)(b).

¶77 The PRA provides that "[i]nformation required of any taxpayer in connection with the assessment or collection of any tax" is exempt from public disclosure "if the disclosure of the information to other persons would: (a) Be prohibited to such persons by [RCW] 82.32.330."[18] RCW 82.32.330(2) provides that "[r]eturns and tax information are confidential and privileged." Under RCW 82.32-.330(1)(c)(ii), "tax information" includes "the nature, source, or amount of the taxpayer's income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability deficiencies . . . or tax payments, whether taken from the taxpayer's books and records or any other source."

¶78 Gronquist contends, and the majority agrees, that this exemption is not applicable to information in a master business license application because such applications "have no connection with the assessment or collection of taxes." Br. of Appellant at 27. The majority cites *Ford Motor Co. v. City of Seattle*, 160 Wn.2d 32, 56, 156 P.3d 185 (2007) for the proposition that "business license applications are not a substitute for tax returns" and, accordingly, "the information contained in the application was not 'required . . . in connection with the assessment or collection of any tax.' " Majority at 749-50 (alteration in original) (quoting RCW 42.56.230(4)). Licensing failed to prove that the information it redacted under RCW 82.32-.330 was exempt from disclosure. Majority at 750. This overextends the *Ford Motor Co.* decision and misconstrues the importance of filing a business license application for purposes of taxation.

¶79 In the *Ford Motor Co.* case, the defendant asked the court to treat its business license application as a proper tax return, thereby triggering a statute of limitations defense to requiring payment of unpaid back taxes the city of Tacoma wished to collect. 160 Wn.2d at 55-56. Our

---

[18] RCW 42.56.230(4).

Supreme Court rejected this invitation, reasoning that a business license application is "designed to license a company to engage in business, not to provide financial information for taxation purposes." 160 Wn.2d at 56. In the context of the *Ford Motor Co.* case—a situation where a defendant has registered with the Department of Revenue (DOR) for purposes of business and occupation (B&O) taxation but has failed to file appropriate tax returns—this makes sense. A proper tax return is necessary to calculate B&O taxation as that tax "is measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be." RCW 82.04.220(1).[19]

¶80 But, while business license applications are not a substitute for appropriately filed tax returns, registering such an application puts the appropriate taxation authority *on notice* that B&O tax will be due. *See, e.g.*, *In re Disciplinary Proceeding Against Cramer*, 168 Wn.2d 220, 226, 225 P.3d 881 (2010) (because "registering a new business with DOR is required by law," DOR has agents "charged with locating unregistered business entities"). The *Ford Motor Co.* decision itself recognizes this distinction:

> [E]ven if the license applications could be considered returns, Ford failed to file them until 2000. Had Ford filed them in the years they were due, Tacoma might have known to request tax returns and payment of taxes at that time. However, *Ford failed to provide such notice of its business activities in a timely manner*. Its belated filing of license applications cannot now be used to avoid paying its fair share of the [B&O] tax burden to Tacoma.

*Ford Motor Co.*, 160 Wn.2d at 56 (emphasis added). Accordingly, contrary to Gronquist and the majority's assertions,

---

[19] In Seattle, for instance, the B&O tax is currently calculated for both retailers and retail service providers as being equal to the annual "gross proceeds of such sales of the business . . . multiplied by the rate of .00215." SEATTLE MUNICIPAL CODE 5.45.050(C).

the business license application plays an essential function in the assessment and collection of B&O taxes.

¶81 Because a master business license application includes information required "in connection with the assessment or collection of any tax," RCW 42.56.230(4), the exemption for tax information under RCW 82.32.330 should be applicable. In result, whether the business owner purchased or leased any fixtures (viewed either as "assets" or "payments") and whether the owner bought, leased, or acquired all or part of an existing business (again viewed as "assets" or "payments") should have been redacted as required by RCW 82.32.330. For that reason, I concur only in the result.

Reconsideration denied October 9, 2013 (amended order).